## CALHOUN v. BRYANT et al.

Where all the interested parties to a controversy are before the court and it has authority to determine an objection to its jurisdiction, a judgment determining the controversy after overruling the objection is conclusive unless appealed from, though the ruling as to jurisdiction is erroneous.

Though jurisdiction depends on service of process and upon the fact that the subject-matter of the action is one upon which the court is given authority to exercise judicial authority, these things do not in themselves constitute "jurisdiction," since, when parties are before the court and present to it a controversy which the court has authority to decide, a decision appropriate to that question, but erroneous, is a proper exercise of "jurisdiction."

An order of the county court setting aside a decree of final distribution is appealable.

Adoption, being a creation of statute unknown to the common law, is not a contractual relation, and the laws of the place where it occurred do not become part of the contract so as to govern all the rights, which the parties may have as an incident to the relation, as the right of inheritance in land situated without the place of adoption.

The right of inheritance is not a necessary incident to the relationship of parent and child, and hence is not necessarily incident to the relationship of adoption.

The word "status," as applied to the relationship of parent and child, husband and wife, or other like relation, is not synonymous with the word "right," but is to be construed as meaning "relationship," and hence the word "status" does not necessarily imply the existence of the right of inheritance.

As each state possesses the power to control and direct the descent or distribution of property within its borders, the descent of real property is governed by the law of the situs and the distribution of personal property by the law of the owner's domicile.

A foreign adoption will, if not against public policy, be recognized in another state, but the law of the place where it occurred cannot determine the rights of the parties to the adoption to inherit land located in another state, for while the validity of the adoption depends upon the law of the place where it occurred, and the relationship or status of the parties to the adoption depends upon that law, yet, as such law has no extraterritorial effect, it cannot determine the rights of inheritance which, as an incident to the relationship, the parties may have in property situated without such state.

Civ. Code, §§ 107-138, treats of the relationship between parent and child. Sections 107-127 of that title define the rights, duties, and obligations of children by birth, and sections 128-138 those of adopted children. While neither chapter contains any specific provision as to the right of inheritance, section 136 provides that a child may take the family name of the person adopting him, and that after adoption the two shall sustain towards each other the relation of parent and child, having all the rights and duties of that relation, and section 137 relieves the parents of an adopted child of all duties and responsibilities towards it. **Held,** that the relation between adopted parents and children is the same as between natural parents and children, and an adoptive parent may inherit real property owned by an adopted child.

(Opinion filed, November 14, 1911.)

Appeal from Circuit Court, Beadle County; Hon. LYMAN T. BOUCHER, Judge.

In the matter of the estate of Arthur Max Moler, deceased. Sarah R. Calhoun filed objections to the final report of Charles R. Bryant, administrator. There was a decree for the objecter in the County Court and in the Circuit Court on appeal, and the administrator and another appeal. Affirmed.

*C. C. Craig* and *Gardner, Fairbank & Churchill,* for appellants. *Charles A. Robbins* and *Mouser & McClaskey,* for respondent.

SMITH, P. J. Appeal from the circuit court of Beadle county. The case originated in the county court of Beadle county upon the probating of the estate of Arthur Max Moler. The facts are not in dispute and are stated as follows in appellant's brief.

"Arthur Max Moler was the natural son of Henry Moler and Cora L. McFarland Moler. His father died in 1887, and his mother died in 1886. His mother left a sister, Carrie L. McFarland, now Carrie L. Hearne, one of the defendants. His father left two sisters, Ellen B. Potter and Sarah Calhoun, the plaintiff in this action. Arthur Max Moler was 13 months old at the time of his mother's death, and he had no brothers or sisters.

"In 1889, the plaintiff petitioned the county court of Mercer county, Ill., for the adoption of Arthur Max Moler as her child. The petition was granted, and the order of the court entered in August, 1889. The child was then four years old. The order of adoption states: 'It is therefore ordered and adjudged by the court that Arthur Max Moler be the adopted child of the said petitioner and capable of inheriting her estate.' After this adoption, Arthur Max Moler inherited from his father, Henry Moler, $945 life insurance; from his grandfather, David Moler, $2,304; from his grandfather, Benjamin McFarland, $2,686; and accumulated interest of $537—making $6,472. This money descended to him after his adoption and was invested by him, after he became 21 years of age, in a half section of land in Beadle county, S. D. Sarah R. Calhoun moved with the said Arthur Max Moler from Illinois to Nebraska in 1889. Arthur Max Moler died in Arkansas, in 1906, and he was buried in Mercer county, Ill. He was over 21 years of age at the time of his death and still owned the land in Beadle county. He had never married and had no children and no father or mother living. His natural heirs at law were his three aunts, Sarah R. Calhoun and Ellen Porter, sisters of his father, and Carrie L. Hearne, a sister of his mother.

"Carrie L. Hearne filed a petition for letters of administration in the county court of Beadle county March 29, 1907. Charles E. Bryant was appointed administrator and a final decree of distribution was entered November 20, 1907, decreeing that the three aunts were the heirs of Arthur Max Moler in equal parts and vesting the title of the land above described in the three aunts in equal parts. After the entry of this decree on the 25th day of January, 1908, Carrie L. Hearne and her husband conveyed her

one-third interest in said land to Myra F. Eastman, by quitclaim deed which was duly acknowledged and recorded.

"On the 26th day of June, 1908, the plaintiff made a motion to vacate the final decree of the county court and for leave to file objections to the final report of the administrator. The motion was not heard until the 17th of April, 1909, when the defendants appeared specially and objected to the motion on the ground that the county court had lost all jurisdiction of the matter. The objection to the jurisdiction was overruled, and the defendants then filed a demurrer. The demurrer was overruled, and the defendant then filed objections to the motion on its merits, and the matter was heard by the county court on the 29th day of April, 1909. The county court made an order setting aside and vacating the final decree entered on the 20th of November, 1908, and fixed a new date for hearing final report of the administrator. The plaintiff filed numerous objections to the administrator's report, and the county court on the 3d day of September, 1909, made findings of fact and conclusions of law and a decree in which the court held that plaintiff, Sarah R. Calhoun, the adopting mother of Arthur Max Moler, was his sole and only heir, and that the title to the land vested in her absolutely, cutting off the other two aunts from any interest in the estate.

"On the 11th of September, 1909, the defendants appealed to the circuit court of Beadle county. Upon a retrial. of the action, the court overruled the findings requested by the defendants and entered findings and decree sustaining the decision of the county court. A bill of exceptions was settled and motion made for a new trial. The motion for a new trial was denied, and order denying same filed and entered September 12, 1910. On the same day an appeal was perfected to this court from the final decree and from the other denying the new trial."

Appellant presents three questions for consideration on this appeal: "First, had the county court of Beadle county any jurisdiction to set aside its final decree and enter a new decree as it did in this case? Second, does the law of Illinois or of South Dakota govern the rights of parent and child in real estate situated in

South Dakota upon adoption of the child in Illinois? Third, can a mother inherit real estate under the laws of South Dakota from her adopted child which came to him by descent from his natural ancestors?"

[1] Appellant's first contention is that the probate court was without jurisdiction to set aside the decree of distribution entered on November 20, 1907, and that said decree, not having been appealed from, became final and conclusive as to the rights of all the heirs. But, even if that be conceded to be the correct rule of law, it is not conclusive of the precise question before the court on this appeal. The record shows that on the 26th day of June, 1908, plaintiff, who is respondent here, made a motion in the county court to vacate and set aside the decree of distribution entered on the 18th day of November, 1907, which motion was based upon various grounds, and supported by various affidavits which we deem immaterial to the consideration of the question involved here. Defendants, who are appellants here, appeared specially and objected to this motion on the ground that the county court had lost jurisdiction. On the 17th day of April, 1909, the county court overruled the objections to its jurisdiction, and defendants thereupon filed a demurrer to the proceeding by motion, which was overruled by the court; exceptions being entered to both rulings. Defendant thereupon filed objections to the motion on its merits, which were heard on the 29th of April, 1909, and on that date the court made an order setting aside and vacating the decree of final distribution entered on the 18th of November, 1908, and fixing a new date for a hearing on the final report and petition for distribution. To each of these rulings defendant excepted, but no appeal has ever been taken from the order vacating this decree. The precise questions presented to the county court upon the hearing of this motion were: First, whether the court had lost jurisdiction of the proceedings, and, second, whether, if the court was of opinion it had not lost jurisdiction, the facts disclosed on the merits of the motion were sufficient to warrant the setting aside of the decree; or whether, upon any showing of facts whatever, the court might set aside the decree.

It may be conceded that no court can acquire jurisdiction either of person or property simply by holding that it has jurisdiction. But the motion itself was a proceeding pending before the probate court, which upon its face purported to affect the rights of persons then before the court as to property which may or may not have been within the jurisdiction of that court. It follows that, even if it be the law that the county court had lost jurisdiction or was without power to vacate the decree of distribution, yet the court certainly had jurisdiction to pass upon and determine the questions arising upon the motion, which were presented to the court for its ruling, by parties then present in court. We may assume, though we do not decide, that the law did not give the court authority to vacate the decree, yet the court undoubtedly had authority to decide the questions presented by the motion arising between parties then present urging their respective contentions before the court. In Herman on Estoppel & Res Judicata, vol. I, par. 66, it is said: "Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them; the question is whether on the case before the court their action is judicial or extrajudicial, with or without the authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction. What shall be adjudged or decreed between the parties and with which is the right of the case, is judicial action by hearing and determining it."

[2] It is true that jurisdiction is said to *depend* upon various things—for instance, upon service of process, and that the subject-matter must be one upon which the court is given authority to exercise judicial authority. But these various *things* upon which jurisdiction may *depend* do not in themselves constitute "jurisdiction." When parties are before the court and present to it a controversy which the court has authority to decide, a decision not necessarily correct; but appropriate to that question, is a proper exercise of judicial power or jurisdiction. So far as the jurisdiction

itself is concerned, it is wholly immaterial whether the decision upon the particular question be correct or incorrect. Were it held that a court had "jurisdiction" to render only *correct* decisions, then, each time it made an erroneous ruling or decision, the court would be without jurisdiction, and the ruling itself void. Such is not the law, and it matters not what may be the particular question presented for adjudication, whether it relate to the jurisdiction of the court itself, or affects substantive rights of the parties litigating; it cannot be held that the *ruling* or decision itself is without jurisdiction, or is beyond the jurisdiction of the court. The decision may be erroneous, but it cannot be held to be void for want of jurisdiction. In Herman on Estoppel, vol. 1, § 389, it is said: "Whenever a party seeks the aid of a court of justice to enforce his rights and submits his case and objections to the decision of a court and invites it to decide upon them and makes no objection to the jurisdiction until after the court has heard and adjudicated, he is estopped from subsequently objecting to its decision and the proceedings taken thereon." If it be true that a party who makes no objection to the jurisdiction of the court may be held estopped from subsequently objecting to its decision for lack of jurisdiction, may it not with equal propriety be held that a party who makes objections to the jurisdiction and thereafter acquiesces in an erroneous decision by his failure to appeal should be held, likewise, to be estopped. In 2 Cyc. 644, it is said: "If a party to an action acquiesces in a judgment or order against him, he thereby waives his right to have such judgment or order reviewed by an appellate court." In the case of Prosser v. Chapman, 29 Conn. 515, it was held, in effect, that a party might waive his right to object to an order by the trial court which concededly the court had no power to make. The court says: "The right to appeal from the judgment on the plea of abatement was one which the judge had no power to deny, and he could have been compelled to entertain the defendant's motion and allow such appeal. * * * It is no answer to say that the defendant pleaded to the action because the justice refused to entertain his motion to appeal and ordered him so to plead. The justice had no right to reject or defer such motion, and no power

·to enforce such order, and, as defendant was bound to know the law, he must be presumed to have known his rights and the remedies provided by law for their protection." It is thus held that acquiesence by complying with an order which the court had no power to make was a waiver which in effect estopped him on appeal from questioning the authority of the court to make the order. Suppose the court in this case had ruled upon the motion that the court had lost jurisdiction of the probate proceedings and the property affected by the decree, could it be contended that the court was without jurisdiction to make such ruling? In the case at bar, if it be conceded that the court was without legal power to vacate the decree, it cannot be deduced that the court was without jurisdiction or authority to decide the pending motion, nor that the court was without *jurisdiction.* merely because the decision may have been erroneous.

[3] The ruling is one from which an appeal would lie. In re Olson, 10 S. D. 648, 75 N. W. 203; Weber v. Tschetter, 1 S. D. 205, 46 N. W. 201; Kirby v. Ramsey, 9 S. D. 197, 68 N. W. 328; Deering v. Quivey, 26 Or. 556, 38 Pac. 710. The decree became and was vacated, in effect, by the order made by the court upon a motion which the court had jurisdiction to decide, with all the parties before it, in which ruling appellant acquiesced. He cannot now be heard to allege that such decree was not vacated. By this proceeding and conduct of appellant the first decree became and was completely eliminated from further consideration, and the case stood as though no such decree had ever been entered. We hold that the court had jurisdiction to decide the question presented upon the motion, and that the failure of the defendant to appeal from the ruling constituted a complete waiver of any objection to the jurisdiction of the court interposed at the hearing of the motion or elsewhere, and precludes this court from a consideration or determination of the question whether the probate court had or had not authority to vacate the decree. We shall not therefore consider further the effect of that decree. We shall consider and determine only the questions which arise upon the final

decree of distribution, and the order overruling the motion for a new trial so far as the same effects the final decree before us.

The next question is whether the law of Illinois, where the adoption took place, or the laws of this state, govern the rights of adoptive parents and adopted children as to inheritance and descent of real property situated in this state. The statuate of Illinois relating to adoption, so far as material to this appeal, is as follows :   ·

"Sec. 5. A child so adopted shall be deemed, for the purpose of inheritance by such child, and his descendants and husband or wife and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation.

"Sec. 6. The parents by adoption and their heirs shall take by descent from any child adopted under this or any other law of this state for the adoption of children, * * * but the parents by adoption and their heirs shall not inherit any property which such child may take or have taken by gift, bequest, devise or descent, from his kindred by blood." Hurd's Rev. St. 1909, c. 4.

It is conceded that respondent, Sarah R. Calhoun, could not· inherit, as adoptive mother, the real property in controversy if it were situated in Illinois. It is contended by appellant that the "status" of the parties became fixed by the laws governing the rights of inheritance, of parties to adoption in Illinois, and that, as respondent could not inherit the property if situated in that state, her rights are not enlarged by the laws of this state, and she cannot inherit here.

The statutes of this state recognize the natural relationship of parent and child and define and establish the rights, duties, and obligations incident to that relationship. These statutes apply alike to children born in this and any other states or countries. Chapter 2 of the Civil Code treats of ·adoption: "Sec. 128. A

minor child may be adopted by any adult person, in the cases and subject to the rules prescribed in this chapter." Sections following relate to the procedure for adoption and are not material here. Section 136 provides: "A child when adopted may take the family name of the person adopting. After adoption, the two shall sustain toward each the relation of parent and child, and have all the rights and be subject to all the duties of that relation." The statute defining rights of inheritance does not in express terms recognize the relation of parent and child created by adoption under the laws of this or any other state, but we see no reason why we should not hold that relationship by adoption is as fully recognized and covered as is the natural relationship with its legal rights of inheritance. The statutes of the various states differ in details of procedure required for adoption, but the result attained is substantially alike in all—the establishment of the relationship of parent and child.

[4] Counsel for appellant urge that adoption has its foundation in contract between the person adopting and the child adopted, and that the whole law of the state governing and defining the legal rights flowing from adoption enters into and becomes a part of the relationship created thereby. We cannot agree with this interpretation of these statutes. We believe it should be held that the statutes of each state authorize and permit the creation of the relationship of parent and child by adoption, with such incidental rights within the state as are conferred by the laws of that state, in the matter of custody, control, and the right of inheritance of property in that state. The relationship created no more has its foundation in contract that has the relationship created by birth. The decisions of this court recognize the general doctrine of the law that adoption is a creature of statute. In the case of Henry v. Taylor, 16 S. D. 424, 93 N. W. 641, this court said: "Adoption was unknown to the common law, and, independently of the statute, there was no such thing as the adoption of an heir." Quinn v. Quinn, 5 S. D. 328, 58 N. W. 808, 49 Am. St. Rep. 875. And this is equally true of the right of inheritance. Logically the law of any state might provide—the right itself

being a creation of the statute—that no child, either by birth or adoption, should possess the right to inherit property. It would follow that the status or relationship of parent and child, whether by birth or adoption, may be created under the statutes of any state, for certain purposes, such as support, custody, and control, while the right of inheritance of property as to either parent or child may be granted, denied, or limited by the same statute. It is clear that the laws of any state may recognize the difference between children by birth and by adoption, and may grant, deny, or limit the right of inheritance as to the latter class.

[5] The right of inheritance does not grow out of the relationship of parent and child, though it may be created and conferred in the exercise of legislative wisdom, because of the existence of that relationship. But the right of inheritance is not a necessary incident of the relationship, whether natural or adoptive. Appellant's counsel contend and cite numerous decisions which say that the "status" of the parent and the adopted child is fixed by the law of the state in which the adoption takes place, and urge that these authorities in effect hold that the right of inheritance of parties to an adoption is fixed by the law of that state. The conclusion of such an argument would be that this court must enforce rights of inheritance of property in this state as established by the laws of a sister state, or must limit the right of inheritance of property as the same is limited by the laws of another state. We cannot accede to this view. It is well settled by the decisions that laws of descent and distribution of property, in the absence of express statutory requirement, are wholly inoperative and are given no force or effect whatever, outside of the state wherein they exist. It is surprising, therefore, to find an apparent confusion of thought in decisions dealing with the right of inheritance as affected by the laws of adoption of another state.

[6] Appellant's counsel use the word "status" in both argument and brief in the sense of and as a synonym for "right," and cite authorities to sustain this view. We think the word "status" in this connection may be considered a synonym for "relationship," and that it is used in this sense in very many, if not all, the de-

cisions of the courts.  As we have suggested, the "status" or "re-
lationship" of parent and child, whether by birth or adoption, is
clearly distinguishable from the right of inheritance.  The Legisla-
ture of another state may declare, in the absence of constitutional
restrictions that no child, either by birth or adoption, shall possess
the right to inherit property from its ancestors.  Would the courts
of this state hold that under such law a child, resident of that state,
would be rendered incapable of inheriting real property of the
parent which was situated in this state?  The word "status" is per-
haps more frequently used in connection with the marriage rela-
tion than any other.  It seems always, or nearly always, used
to express or recognize a certain "relationship."  It is said that a
marriage valid in the state where consummated, and not contrary
to the policy or laws of another state, fixes or establishes the
"status" of the parties to the contract of marriage everywhere—
that the relationship or "status" thus established is universally
recognized.  But suppose a man and woman marry in a state
whose laws give the wife only a right of dower in her husband's
real property; the husband, a resident of that state at the time of
his death, owning real property in this state.  Would it be con-
tended that, because the law of the state in which the marriage
took place fixed the "status" of the parties, the wife could take
only a dower interest in her deceased husband's real property
in this state?  Yet the dower right is an incident of the marriage
contract under the law of the state where consummated, and the
law of that state is ordinarily said to have fixed tne "status" of
the parties.  We believe a substantially correct statement of the
proposition is that the law of the state where the marriage is con-
summated establishes the "relationship" of one to the other as hus-
band and wife or parent and child which is universally recognized,
but that the mere incidents flowing from that "status" or relation-
ship are controlled by the law of the domicile of the parties or
the *situs* of the property.  The interest of the wife in the hus-
band's property, whether she take as heir or otherwise, is wholly
a creation of statute law precisely as is the right of inheritance
between parent and child natural or adoptive, and we see no rea-

sonable ground for distinction between the two as to the principle under discussion.

[7] It is assumed in the decisions of the courts that each state possesses plenary power to control and direct the descent or distribution of property within its borders. This principle has been frequently applied in decisions which hold that descent of real property is governed by the law of its situs, and distribution of personal property is controlled by the law of the domicile of the decedent at the time of his death because the situs of personal property follows, and is determined by, the domicile of the owner.

In the case of Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321, one of the early leading cases, Gray, Chief Justice, says: "This case presents for adjudication the question * * * whether a child * * * adopted * * * by another person in a state where the parties at the time have their domicile, under statutes similar to our own, and which, like ours, give a child so adopted the same rights of inheritance and succession as legitimate offspring in the estate of the person adopting him, is entitled, after the adopted parent and the adopted child have removed their domicile into this commonwealth, to inherit the real estate of such parent in this commonwealth upon his dying here intestate. The question how far a child adopted according to the law in the state of the domicile can inherit lands in another state was mentioned by Lord Brougham in Doe v. Vardill, 7 Cl. L. & Fin. 895-898, and by Chief Justice Lowrie, in Smith v. Derr, 34 Pa. 126, 128 [75 Am. Dec. 641], but, so far as we are informed, has never been adjudged. It must therefore be determined upon a consideration of general principles and of a judicial application of these principles in anaolgous cases. As a general rule, when no rights of creditors intervene, the succession and disposition of personal property are regulated by the law of the owner's domicile. It is often said, as in Cutler v. Davenport, 1 Pick. 81, 86 [11 Am. Dec. 149], cited by the tenant, to be a settled principle that 'the title to and the disposition of real estate must be exclusively regulated by the law of the place in which it is situated.' But so general a statement without ex-

planation is liable to mislead. * * * It is a general principle that
the status or condition of a person, the relation in which he stands
to another person and by which he is qualified or made capable to
take certain rights in that other's property, is fixed by the law
of the domicile; and that this status and capacity are to be rec-
ognized and upheld in every other state so far as they are not
inconsistent with its own laws and policy. Subject to this limita-
tion upon the death of any man, the status of those who claim suc-
cession or inheritance in his estate is to be ascertained by the law
under which that status was acquired. His personal property is,
indeed, to be distributed according to the law of his domicile at
the time of his death, and his real estate descends according to
the law of the place in which it is situated; but in either case it is
according to those provisions of that law which regulate the suc-
cession or the inheritance of persons having such a status. * * *
A person, for instance, who has the status of child of another per-
son in the country of his domicile, has the same status here, and
as such takes such share of the father's personal property as the
law of the domicile gives him, and such shares of his real estate
here as a child takes by the laws of this commonwealth, unless ex-
cluded by some positive rule of our law. Inheritance is governed
by the lex rei sitæ; but legitimacy is to be ascertained by the lex
domicilii. If a man domiciled in England has two legitimate sons
there, and dies intestate, owning land in this commonwealth, both
sons have the status of legitimate children here; but, by virtue of
our statute of descents, the land descends to them equally, and not
to the eldest son alone, as by the law of England. If a marriage
(in the proper sense of the term, not including Mormon or other
polygamous marriages [Hyde v. Hyde, L. R., 1 P. & D. 130]) is
celebrated in one state, according to the form prescribed by its
laws, between persons domiciled there, and competent to inter-
marry, it is universally admitted that the woman must be recogniz-
ed everywhere as the lawful wife of the man, and entitled as
such upon his death to such dower in his lands as the law of the
state in which they are situated allows to a widow; although it
is this law, and not the law of the domicile, which fixes the pro-
portion that she shall take."

. This learned and distinguished jurist then discusses at great length the status of husband and wife under the laws of various states and of Great Britain, and the English and American cases in which marriage contracted in another state or a foreign country is deemed valid or invalid under the law of the forum, and cases dealing with rights of inheritance depending upon the validity or invalidity of marriage and the rights of illegitimate children. As a deduction from the decisions in the numerous cases cited and examined, the court in effect lays down the rule that when the foreign marriage or foreign birth is regarded as legal or legitimate in the foreign state, and the law or public policy of the forum does not declare such marriage illegal or the offspring incapable of inheriting, the status of marriage or the right of inheritance as established by the law of the forum will be recognized and enforced. In discussing the statute of descents of Massachusetts, the court says: "But this section must be understood as merely laying down general rules of inheritance, and not as completely and accurately defining how the status is to be created which gives the capacity to inherit. It does not undertake to proscribe who shall be considered a child, or a widow, or a husband, or what is necessary to constitute the legal relation of husband and wife, or of parent and child. Those requisites must be sought elsewhere. * * * We are not aware of any case, in England or America, in which a change of status in the country of the domicile, with the formalities prescribed by its laws, has not been allowed full effect, as to the capacity thereby created of succeeding to and inheriting property, real as well as personal, in any other country, the laws of which allow a like change of status in a like manner with a like effect under like circumstances. We are therefore of opinion that the legal status of child of the intestate, once acquired by the demandant under a statute and by a judicial decree of the state of Pennsylvania, while the parties were domiciled there, continued after their removal into this commonwealth, and that by virtue thereof the demandant is entitled to maintain this action."

Does this language mean anything more than that an adoption or marriage under the laws of another state or country, by

persons domiciled there, which would create the legal relation of parent and child or husband and wife in that country or state, between persons who, had they been residents of this state, would have been permitted by the laws of this state to enter into like relations here, would carry with it, as to such persons domiciled here, the same incidents or rights which belong to the same relationship when created under the laws of this state? In short, is it not the relationship itself, and not merely its incidents, which must be found to be in violation of the public policy or the law of the forum. A younger son may not inherit real property in Great Britian because of the law of prima geniture; but would it be contended that he could not inherit real property in this state equally with the elder brother? Do not the decisions then also mean that, where the relationship itself is recognized as legal, and the incidents of the relationship, such as the right of inheritance, are in conflict with the law of the forum, such incidents or incidental rights growing out of the status must yield to and be governed by the law of the forum?

That the right of inheritance under adoptive statutes is not in any sense a contractual right, but is wholly a statutory right which may be changed or modified at the will of the Legislature, is decided in the recent case of Sorenson v. Rasmussen (Minn.) 131 N. W. 325. An act was passed by the Legislature of Minnesota changing the existing rights of inheritance of adopted children, and conferring upon them the same rights as natural children. The question before the court was as to whether a child adopted prior to the enactment of this law became entitled to inherit the same share as a natural child. In construing this statute the Minnesota court says; "A law of inheritance making a change in the prior law as to adopted children—a numerous permanent existing class of persons—does not differ in principle from a law making a change in the rules of inheritance of property by force of the relationship of husband or wife, or through the relationship between other persons, and no different rule of construction of a statute making such change is required." The new statute was held to confer the right of inheritance upon all adopted children,

whether the adoption took place prior or subsequent to the enact-
ment of the statute. The court cited Dodin v. Dodin, 16 App.
Div. 42, 44 N. Y. Supp. 800; Theobald v. Smith, 103 App. Div.
200, 92 N. Y. Supp. 1019; Gilliam v. Guaranty Co., 186 N. Y. 127.
78 N. E. 697, 116 Am. St. Rep. 536. In Dodin v. Dodin, supra, it
is stated: "The adoption pursuant to the act of 1873 created the
relation of parent and child. * * * This being the existing re-
lation between them, the status of the child in respect to her in-
heritable capacity was distinct from and independent of the act of
adoption, and was subject to legislative control. The endowing
her with the former by a later statute had no effect upon the act
of adoption. It merely modified the law of descent as applied to
children before then adopted, as well as to those who should there-
after be placed in that relation. * * * Although by the act of
adoption under the law as it then existed heirship was not an in-
cident of the relationship created between the adopted children,
respondents herein, and Hein Rasmussen, under the provisions of
section 3616, R. L. 1905, upon the death of said Hein Rasmussen,
the respondents acquired the same right in his estate that by law
is given to natural children of a deceased parent."

In Shick et al. v. Howe, 137 Iowa, 249, 114 N. W. 916, 14
L. R. A. (N. S.) 980, the first section of the syllabus says: "The
right of an adopted child to inherit from her foster parent de-
pends on the law of the domicile of the foster parent and child."

In the opinion the court says: "It may be conceded that the
weight of authority is the other way (Van Derlyn v. Mack, 137
Mich. 146, 100 N. W. 278, 66 L. R. A. 437, 109 Am. St. Rep.
669; Helms v. Elliott, 89 Tenn. 446, 14 S. W. 930, 10 L. R. A.
535), and possibly but for the previous analogous holdings of this
court a different conclusion might be reached."

In the case of Van Matre v. Sankey, 148 Ill. 536, 36 N. E.
628, 23 L. R. A. 665, 39 Am. St. Rep. 196, in the sixth syllabus
the court holds: "Real property may descend to a child who by
adoption in another state has become there the lawful heir of the
owner of the property." In the opinion the court commenting on
the case of Keegan v. Geraghty, 101 Ill. 26, says: "In the Keegan

Case, supra, the child adopted under the laws of Wisconsin sought in this state to take, not from the adopted parent, but from collat erals and by representation. This court expressly recognized the status established in Wisconsin, so far as it related to the right to inherit from the parent by adoption, because consistent with the laws of this state relating to descent to adopted children, but denies the right to take by representation from collateral kindred of the parent for the reason that such taking was prohibited by, and inconsistent with, the laws of this state."

[8] We believe the reasoning of these cases, as well as the great weight of authority, sustains the broad proposition that adoption in another state or country, between persons who might lawfully enter into the same relationship under the law of the former, will be recognized, but that the incidents growing out of such relationship, such as the right of inheritance of real property, will be governed by the law of the situs of property. We are aware that the Supreme Court of Kansas, in Boaz et al. v. Swinney et al., 79 Kan. 332, 99 Pac. 621, has reached a different conclusion, holding that: "An adopted child has no right of inheritance from its adopted parents other than those given by law under which it is adopted"—the conclusion announced being apparently founded largely upon the language of the court in Van Matre v. Sankey, supra, quoted from Ross v. Ross, supra. With due deference we are inclined to the view that the reasoning of authorities cited by that learned court does not fully sustain the conclusion announced. An attempt to review the numerous decisions dealing with rights of inheritance springing from adoption would extend this opinion beyond reasonable limits, though we may add that in our opinion none of them, with the exception of the Kansas case above referred to, are in conflict with the conclusion we have indicated. We hold that the right of inheritance by the adoptive mother, of real property in this state, is incidental to the relationship created by the adoption under the laws of Illinois, and is governed by the law of this state, and not by the law of that state defining the right of inheritance between the adopted child and the adoptive mother.

[9] It is further urged by appellant that the adoptive parent cannot inherit from the adopted child under the statutes of this state, and that the parent especially will not be given any rights which are not clearly provided for by the statute. It is urged that, in the absence of a statute specifically declaring that the parent by adoption shall inherit from the child adopted, there can be no such inheritance by the parent. It may be conceded that the adoptive parent cannot inherit from an adopted child in the absence of a statute conferring the right of inheritance. The exact question in this case is whether the statute of this state, creating and defining the rights and obligations between the adoptive parent and the adopted child, gives the right of inheritance to the adoptive mother. In this case, as in all the cases cited by appellant as authority, the question resolves itself into one of construction of statutory provisions. Title 2 of the Civil Code of this state treats of the relationship between parent and child. Chapter I of that title defines the right, duties, and obligations of children by birth, while chapter 2 of the same title provides the method of adoption of children and defines the rights, duties, and obligations of parent and child created by the proceeding. Neither chapter contains any specific provision relating to the right of inheritance. But section 136 of chapter 2 provides: "A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have *all the rights and be subject to all the duties* of that relation." The complete assumption of a new relationship created by adoption is emphasized by the provisions of section 137 of the same chapter, which says: "The parents of an adopted child are, from the time of adoption relieved of all parental duties towards and of all responsibility for the child so adopted, and have no right over it." Under the provisions of the two chapters the relationship created between the adoptive parent and the adopted child is in no manner differentiated from the same relationship arising from birth. Chapter 2 expressly declares that: "After adoption the *two* shall sustain towards each other the legal relation of parent and child and have *all the rights* and be subject to all the duties of that relation." There are no limita-

tions or qualifications as to the relationship created and no limitations as to the rights of each with respect to the other, which under the law grow out of the natural relation. Whatever rights the natural parent and child possess under the laws of this state are conferred and possessed equally by the adoptive parent and the adopted child, and we are unable to conceive of any refinements of reasoning which would warrant a distinction between the rights, duties, and obligations of the natural parent and child, and the rights, duties, and obligations arising between the adoptive parent and the adopted child. It seems clear to us that it was the legislative intent to give the adoptive mother *all the rights* of the natural mother. It is not necessary to consider, and we do not decide, anything in this case as to inheritance by right of representation. Butterfield v. Sawyer, 187 Ill. 598, 58 N. E. 602, 52 L. R. A. 75, 79 Am. St. Rep. 246.

It is conceded, under the facts in this case, that plaintiff respondent here would have been sole heir of Arthur Max Moler, had he been a natural son instead of an adopted child. We hold her rights to be the same in either case.

The judgment and order of the trial court are affirmed.

WHITING, J. While concurring in the result reached in the foregoing opinion, I am unable to agree with some of the reasons assigned therefor. My learned colleague assumes, for the sake of his discussion, "that the law did not give the (county) court authority to vacate the decree," and I understand it to be his view of the law that such assumption is correct, and that, when once the county court has entered a final decree of distribution, it has no authority given to it whereby it may, under any circumstances, rightfully modify or vacate such decree. Starting with the above assumption as a premise, my colleague states that the first question presented to the county court upon the motion to vacate the decree of final distribution was "whether the court had lost jurisdiction of the proceedings." With all due respect to my colleague's power to discern the real question upon which a cause rests, the facts compel me to differ from him as it seems to me that, starting from the premise upon which his argument was

based, no question of loss of jurisdiction could arise; it being a question of the validity of the order vacating the final decree, and it being assumed that the court never had jurisdiction to make such an order. Whether the court had lost jurisdiction of those proceedings over which, under the statute, it could acquire jurisdiction, in no manner affects the validity of an order which the court would have no jurisdiction to make even when it had full jurisdiction of the estate in question. If it were a question of "lost jurisdiction," then my colleague's reasoning is unanswerable. because, if a court has the power vested in it whereby, in a proper case and at a proper time, it can make an order, but should make such order when it had lost the right so to do, though having the interested parties before it, the sole remedy left to the injured party might well be an appeal from the action of the court; but when under no circumstances whatsoever does a law give a court the power to make a certain order, if such court attempts to make such an order, its act is an absolute nullity. To illustrate what I would make plain: The circuit court is given jurisdiction or power, in a proper case, to vacate a judgment. If there were a dispute as to the facts upon which rested, in a particular cause, the court's jurisdiction to vacate the judgment rendered therein, and such court wrongfully make an order vacating such judgment, such order of vacation would be valid and conclusive against the parties if the same were not appealed from. In an action in the circuit court, a party applies for a writ of injunction when the facts are in dispute but in fact are such that the court has no jurisdiction or power under the statute to issue the writ, but wrongfully holds that it has such jurisdiction and issues the writ, such writ is valid unless set aside or appealed from, because in a proper cause and under a proper showing the circuit court has power to issue such a writ. But, if a county court in any cause or under any sort of showing should attempt to issue a writ of injunction, its act would be an absolute nullity, for the simple reason that in no possible cause or under any possible showing would such court have jurisdiction or power to issue such writ, and no failure to appeal from this void act could infuse any life into the purported writ. It follows that if, under our statute, no power is given to the county

court, at any time or under any showing, to vacate its decree of final distribution, its attempt to do so would be as void as an attempt on the part of such court to issue a writ of injunction.

If an application were made to the county court to issue a second final decree, where the first had not been set aside, we might have presented a question of lost jurisdiction—jurisdiction to do that which the court once had the power to do—and if the question of such jurisdiction should be raised by a plea of former adjudication, and the court made an erroneous ruling upon the issue raised by such plea, its ruling would be binding and conclusive unless appealed from. However, in the case at bar, the second decree was appealed from, and the record shows that the question of former adjudication was presented to the county and circuit courts.

We are therefore forced to the conclusion that, if the premise from which the reasoning in the foregoing opinion starts is correct, the conclusion reached is wrong. Is the premise a true statement of the law? I think not. In California the superior court is vested with probate jurisdiction. Section 1666 of the Code of Civil Procedure of that state is identical with section 308 of our Probate Court, which reads as follows: "In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." Section 473 of the Code of Civil Procedure of California provides for relief against decrees and judgments in certain cases, and is much like sections 150 and 151 of our Code of Civil Procedure; our section 151 reading in part as follows: "The court may * * * in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect * * *" The courts of California have uniformly

held that their section 473 applied to decrees of final distribution in probate matters exactly as it applies to final judgments in actions at law or in equity. Section 12 of our Probate Code provides: "The process, pleadings, practice and modes of procedure in the county courts shall be the same as provided for in the circuit courts of this state by the code of civil procedure, or as may hereafter be provided for by law, and the process, orders, judgments and decrees of such county courts shall have the same forms, force, lien and effect as in the circuit court, and the clerks of said county courts shall charge and collect like fees in the county courts as in the circuit courts for similar services." Section 151, supra, certainly relates to "practice" and also pertains to the conclusive "force" and "effect" of judgments, decrees, and orders. Moreover, the word "decree," as used in said section 12, supra, is undoubtedly used in its common acceptation as referring to the judgment of the court in a matter other than an action at law, and must certainly be intended to refer to decrees in probate matters, as otherwise such word would be surplusage, the county court not having any equitable jurisdiction.

The motion to vacate the final decree presented to such court the question of whether there had been excusable neglect, upon the part of the moving party, in the proceedings resulting in such decree, and the decision of the court upon the merits of such motion, whether such decision was right or wrong, being upon an issue which said court was given jurisdiction to adjudicate, was final, the decision not having been appealed from. It follows that, the final decree having been set aside by a valid order, the county court had full jurisdiction to render the decree that was appealed from; and this decree is clearly right under the facts shown by the record.

It appears, however, that the interest in said land which, by the first decree, was set over to the appellant Hearne, was by her conveyed to a third party before the date of vacation of such first decree; this purchaser was not made a party to the motion to vacate such decree, nor to any of the subsequent proceedings, for which reason no opinion should be advanced as to the effect of the second decree upon the rights of such purchaser.