ZINTER, Justice
(concurring in part and dissenting in part).
[¶ 66.] I join the Court’s opinion on Issues 1 and 2, but I dissent on Issue 3 (vacating Medicine Eagle’s sentences). On Issue 3, I agree with Judge Salter and Justice Konenkamp that the error alleged in the part II information proceedings involved the question of statutory authority rather than the circuit court’s subject matter jurisdiction. Judge Salter’s federal authorities highlight that distinction. I write to explain why South Dakota’s constitution, statutes, and precedent also require recognition of the distinction. My only disagreement with Judge Salter’s analysis is his additional conclusion that Medicine Eagle made the objection necessary to preserve this issue for harmless error review. Medicine Eagle is limited to plain error review because he did not raise his current part II information objection before the part II information trial. And under plain error review, his sentences must be affirmed under Supreme Court precedent.
[¶ 67.] There is no dispute that the circuit court had jurisdiction over this subject matter. This Court has long-defined “jurisdiction” as: “the power to hear and determine the subject-matter in controversy between parties to a suit, [and] to adjudicate or exercise any judicial power over them[.]” Calhoun v. Bryant, 28 S.D. 266, 271, 133 N.W. 266, 269 (1911) (quoting Herman on Estoppel & Res Judicata, vol. 1, par. 66). We have adhered to similar definitions to this day. See, e.g., supra Chief Justice’s opinion ¶ 40; Wipf v. Hutterville Hutterian Brethren, Inc., 2013 S.D. 49, ¶ 21, 834 N.W.2d 324, 331 (alteration in original) (quoting Restatement (Second) of Judgments § 11 (1982)) (defining “[s]ubject matter jurisdiction” as “the ‘authority [of courts] to adjudicate the type of controversy involved in the action’ ”).
[¶ 68.] The circuit court’s power to hear and determine all aspects of criminal cases is derived from the South Dakota Constitution and Legislature. Article V, § 5 of the South Dakota Constitution provides in pertinent part: “The circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature.” And the Legislature has not limited any aspect of the circuit court’s criminal jurisdiction. SDCL 16-6-12 provides:
The circuit court has exclusive original jurisdiction to try and determine all cases of felony, and original jurisdiction concurrent with courts of limited jurisdiction as provided by law to try and determine all cases of misdemeanor and actions or proceedings for violation of any ordinance, bylaw, or other police regulation of political subdivisions.
Based upon these provisions, the circuit court had “the power to hear and determine” all aspects of Medicine Eagle’s criminal case and to “exercise any judicial power” over the parties. See Calhoun, 28 S.D. at 271, 133 N.W. at 269. Its jurisdiction over the subject matter is clear.
[¶ 69.] The disagreement on appeal arises from the reliance the Chief Justice’s opinion places on Honomichl v. State, 333 N.W.2d 797 (S.D.1983). In Honomichl, no part II informations had been filed with respect to the convictions at issue. Three *908 members of this Court did state that “[w]ithout a formal and sufficient indictment or information, a court does not acquire subject matter jurisdiction and thus an accused may not be punished for a crime.” Id.. at 798. But under the modern understanding of subject matter jurisdiction, this view is no longer followed.[24]
[¶ 70.] Honomichl was decided by a divided Court. Two justices would have held that a defendant can waive the failure to file an information by pleading guilty because the failure to file an information is not jurisdictional. Three justices held that the lack of an information was a jurisdictional defect, which was not subject to waiver. The majority relied on two authorities. It first relied on State v. Mee (Mee I), 67 S.D. 335, 292 N.W. 875 (1940), rev’d on rehearing, 67 S.D. 589, 297 N.W. 40 (1941). The Mee cases, however, were unusual because this Court initially held that entry of a plea without the filing of an information waived the information. Mee I, 67 S.D. at 340-41, 292 N.W. at 877. Only on reconsideration did the Court, rule that the result of not filing an information was that “from [that] point on the county court was without jurisdiction to proceed further in the case until the state’s attorney had filed an information.” State v. Mee (Mee II), 67 S.D. 589, 591, 297 N.W. 40, 41 (1941). But the Mee II Court failed to cite any authority or even one sentence of reasoning for its change in position. As then Justice Wollman later observed, had the Mee II Court recognized the distinction between subject matter jurisdiction in terms of a court’s ability to adjudicate certain classes of cases and a court’s jurisdiction over a particular offense and the particular defendant, “it may well have adhered to its original opinion, which held that defendant had waived the filing of an information by his plea of guilty.” Honomichl, 333 N.W.2d at 800 (Wollman, J., dissenting).
[¶ 71.] The Honomichl majority’s only other authority was Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). 333 N.W.2d at 798. Albrecht, in turn, relied upon Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). In Bain, the Supreme Court utilized language analytically identical to that in Mee II. The Supreme Court held that after an insufficient superseding indictment — which is the same as an information for purposes of today’s discussion — “the jurisdiction of the offense [was] gone, and the court [had] no right to proceed any further in the progress of the case for want of an indictment.” Bain, 121 U.S. at 13, 7 S.Ct. at 788. After Honomichl, however, Bain was overruled by a unanimous Supreme Court in United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).
[¶ 72.] Cotton rejected the 1887 Bain-Mee II concept of jurisdiction as outdated. Id. at 629-30, 122 S.Ct. at 1784-85. The Court observed that it was a “somewhat expansive notion of jurisdiction, which was more a fiction than anything else[.]” Id. at 630, 122 S.Ct. at 1784-85 (internal citations and quotation marks omitted). The Court ruled that the Bain-Mee II concept of jurisdiction was not in keeping with its modern meaning: “i.e., ‘the courts’ statutory or constitutional power to adjudicate the case.’” Id. (quoting Steel Co. v. Citizens for Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998)).
*909 [¶ 73.] The Supreme Court went on to rule that, even though jurisdiction can never be forfeited or waived, the right to indictment can be waived. Id. at 630, 122 S.Ct. at 1785. Waiver can occur because, as the Court had noted in a number of its post-Rum cases, “defects in an indictment do not deprive a court of its power to adjudicate a case.” Id. at 630-31, 122 S.Ct. at 1785 (discussing Lamar v. United States, 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed. 526 (1916) and United States v. Williams, 341 U.S. 58, 66, 71 S.Ct. 595, 95 L.Ed. 747 (1951)). Ultimately, the Court expressly overruled Bain, holding that “indictment defects” and “indictment omissions” do not deprive a trial court of jurisdiction. See id. at 631, 122 S.Ct. at 1785 (stating that “Bain is overruled”).
[¶ 74.] This Court issued similar post-Honomichl decisions in the habitual offender context indicating that the failure to properly file a part II information does not compromise a circuit court’s jurisdiction. In State v. Grooms, 339 N.W.2d 318, 320-21 (S.D.1983), this Court held that failure to re-serve a copy of the part II information on the defendant before his retrial did hot alone justify reversal of his habitual offender conviction. In State v. Graycek, 368 N.W.2d 815, 818 (S.D.1985), this Court held that the failure to refile a part II information after the original charges against the defendant were dismissed and new charges were filed did not deprive the trial court of jurisdiction to sentence the defendant as a habitual offender. And in State v. Alexander, 313 N.W.2d 33 (S.D.1981), following a mistrial, the defendant was charged under a new amended indictment with different language. Notwithstanding this new proceeding and the State’s failure to “file a new supplemental information for habitual offender,” this Court found no error. Id. at 34. We did so because — somewhat like our case today — an habitual criminal information had been filed in the original (but dismissed) proceeding and the State had advised that it intended to proceed on the allegations that were contained in the information from that dismissed proceeding.[25]
[¶ 75.] These decisions and the Cotton ruling support Justice Wollman’s opinion in Honomichl, concluding that the failure to file an information is not a subject *910 matter jurisdiction defect and the lack of an information may be waived. See Honomichl, 333 N.W.2d at 800 (Wollman, J., dissenting). As Justice Wollman stated rhetorically, “If the Fifth Amendment’s guarantee of the right to a grand jury presentment or indictment ... in the federal courts is a personal privilege that may be waived ..., why may it not be held that the alternative charging document [ie., an information] provided by Art. VI, § 10 of the South Dakota Constitution is a personal privilege that may also be waived?” Id. (citing Barkman v. Sanford, 162 F.2d 592 (5th Cir.1947)). Justice Wollman was joined in his dissent by then Justice Dunn. Because their view of subject matter jurisdiction was adopted by the Supreme Court in Cotton, as well as the numerous courts cited in Judge Salter’s writing, we should not cling to an 1887 view of jurisdiction that is no longer followed. The Chief Justice’s opinion does not cite one post-Cotton case supporting its subject matter jurisdiction theory. We should overrule Honomichl and now hold that the lack of a part II information is waivable because it does not divest circuit courts of their subject matter jurisdiction over criminal cases. Under article V, § 5 of the South Dakota Constitution and SDCL 16-6-12, the circuit court’s subject matter jurisdiction— its power to adjudicate such proceedings — cannot be called into question.[26]
[¶ 76.] We should also not lose track of what occurred in this case. In the course of a single criminal proceeding, the State timely filed a part II information, and it timely filed an amended part II information that added to but did not eliminate the originally alleged prior conviction. The State subsequently dismissed the amended part II information, expressly stating in the dismissal that it was proceeding on the originally filed part II information. Even if the Chief Justice’s opinion were correct that no part II information remained following this procedural course of events, the issue on appeal concerns the habitual criminal penalty, not the State’s power to initiate the case in a circuit court. Therefore, these procedural events did not divest the circuit court of its subject matter jurisdiction under the constitution and SDCL 16-6-12.
[¶ 77.] Although the purported absence of a part II information was not a jurisdictional defect, it was a defect in the institution of the part II prosecution or a defect in the part II information itself. Such defects must be raised by motion prior to trial or are deemed waived. SDCL 23A-8-3 (Rule 12(b)); SDCL 23A-8-9 (Rule 12(f)).
[¶ 78.] Required motions under Rule 12(b) range from “[d]efenses and objections based on defects in the institution of the prosecution;” SDCL 23A-8-3(l), to “[defenses and objections based on defects in the indictment or information!;]” SDCL 23A-8-3(3). Within that range lies a defense or objection based upon the dismissal of an amended part II information and the continuation of the habitual offend *911 er proceedings under a previously filed part II information. Concluding otherwise controverts the intent of Rule 12(b) to restrict “the defense tactic of ‘sandbagging’ ” where defense counsel, recognizing a defense “would forego raising the defect before trial, when a successful objection would merely result in an amendment of the pleading (or a new pleading).” 5 Wayne R. LaFave et al., Criminal Procedure § 19.1(d) (3d ed.2007).[27] Here, the dismissal of the amended part II information and continuation of proceedings under the original part II was not only clear to Medicine Eagle, he requested proceeding on the original part II information in his motion to dismiss the amended part II. Yet the majority today would reward Medicine Eagle for his sandbagging in the assertion of this claimed defense or objection. This should not occur under rules specifically designed to prevent such practices.
[¶79.] Medicine Eagle did not make the required motion before trial. Because the claimed error was not raised before trial as required by SDCL 23A-8-3(l) (Rule 12(b)), the objection was waived under SDCL 23A-8-9 (Rule 12(f)). Therefore, at best, the claimed defect in the habitual criminal proceedings is subject to review for plain error. “Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error.” State v. Bowker, 2008 S.D. 61, ¶45, 754 N.W.2d 56, 69. See also United States v. Washington, 653 F.3d 1251, 1258 (10th Cir.2011) (stating that a “late-blooming claim [challenging] an indictment for failure to charge an offense” is reviewable for plain error); United States v. Blade, 336 F.3d 754, 756-57 (8th Cir.2003) (citing Cotton, 535 U.S. at 627, 122 S.Ct. at 1783; United States v. McBride, 862 F.2d 1316, 1319 (8th Cir.1988)) (applying plain error review to the denial of a motion for new trial based upon a defect in an indictment).
[¶ 80.] To demonstrate plain error, a defendant must establish that there was:
(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it seriously affects the fairness, integrity, or public reputation of the judicial proceedings.
State v. Olvera, 2012 S.D. 84, ¶ 9, 824 N.W.2d 112, 115 (quoting State v. Jones, 2012 S.D. 7, ¶ 14, 810 N.W.2d 202, 206). This is the same plain error standard utilized by the Supreme Court. See Cotton, 535 U.S. at 631-32, 122 S.Ct. at 1785. In analyzing an analogous defective indictment proceeding, the Cotton Court skipped immediately to the last element of the test. The Supreme Court concluded that the indictment error in that case did not “seriously affect the fairness, integrity, or public reputation of judicial proceedings!,]” because the evidence was “ ‘overwhelming’ ” and “ ‘essentially uncontro-verted.’ ” Id. at 632-33, 122 S.Ct. at 1786) (quoting Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997)).
[¶ 81.] Like the case in Cotton, Medicine Eagle can claim no lack of fairness, *912 integrity, or public reputation in the part II habitual criminal proceedings because his criminal history is not disputed on appeal. Additionally, the original part II information was timely filed and he was duly arraigned on it before trial on the principal and habitual criminal charges. Thus, he had notice of the specific habitual offender allegation that was ultimately tried. Further, the amended part II information was dismissed on Medicine Eagle’s motion before trial, and Medicine Eagle specifically requested as part of his motion that “the case proceed on the original [p]art II information that was filed at the initiation of [the] case.” The State and the circuit court proceeded exactly as Medicine Eagle requested. The State dismissed the amended part II information and explicitly stated in its written dismissal that “[t]he State does not dismiss the original part II and intends to proceed with that original part II at the trial on such matter.” The State then proceeded to trial on the original part II information with no objection whatsoever from Medicine Eagle.
[¶ 82.] “ ‘A criminal trial is not a game where defendant’s counsel may lie in the weeds and hold back motions or objections that go to the very heart of the prosecution. There exist ample means of attacking the sufficiency of the charge prior to trial. SDCL 23A-8-2.’ ” State v. Lachowitzer, 314 N.W.2d 307, 309 (S.D.1982) (quoting State v. Williams, 297 N.W.2d 491, 493 (S.D.1980)). Even on appeal, Medicine Eagle does not challenge the existence or validity of the prior conviction he was found guilty of. Thus, to paraphrase Cotton, “[t]he real threat ... to the ‘fairness integrity, and public reputation of judicial proceedings’ would be if [Medicine Eagle], despite the overwhelming and un-controverted evidence ... [of his prior conviction was] to receive a sentence prescribed for those committing less substantial ... offenses because of an error that was never objected to at trial. See 535 U.S. at 634, 122 S.Ct. at 1787.
[¶ 83.] For these reasons, I respectfully dissent as to Issue 3. I would affirm Medicine Eagle’s convictions and sentences as a habitual offender.

. The Chief Justice's opinion agrees with the definition of subject matter jurisdiction. See supra Chief Justice's opinion ¶ 40. The flaw in the opinion’s reasoning is that it equates “statutory authority” with “subject matter jurisdiction.” See id. If this reasoning were correct (it is not), all trial errors involving statutory authorization would constitute jurisdictional errors not subject to waiver.

. The Chief Justice’s opinion overlooks these cases when it states that none of the cases in this writing deal with "a situation in which the part II information had been dismissed.” See supra Chief Justice’s opinion ¶ 39 n. 15. In each of the foregoing cases there was no part II information that had been filed or served in the criminal proceeding in which the defendant was being prosecuted. And there is no distinction between proceeding in a criminal action in which there is no information and proceeding in a criminal action in which the information is dismissed. For this reason, the Chief Justice's opinion also overlooks several additional cases. For example, former Justice Wollman’s writing came in a case in which this Court was reviewing jurisdiction following guilty pleas where "informations were not filed by the State on either offense.” Honomichl, 333 N.W.2d at 798. In Mee I, "no information had been filed ..., but this [Court concluded that it] did not affect the jurisdiction of the court over the act charged in [that] case.” 67 S.D. at 339, 292 N.W. at 877. And like the case we consider today, the opinion reversed in Bain came in a case where amendments to an indictment were determined to render the indictment "no indictment óf a grand jury” at all. Bain, 121 U.S. at 13, 7 S.Ct. at 787, overruled by Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860. Ultimately, the United States Supreme Court has concluded- that a defendant may waive the right to any indictment, not just “dismissed” indictments. Cotton, 535 U.S. at 630, 122 S.Ct. at 1785. As an aside, it should finally be noted that the original part II information in today's case was never dismissed by the circuit court or the State. As is more fully explained hereafter, infra ¶¶ 77 and 82, both the circuit court and the State acceded to Medicine Eagle's request to dismiss the amended part II information and proceed on the original part II information.

. Moreover, even if we were to continue to follow the now discredited view of subject matter jurisdiction as expressed in Honomichl and Mee II, jurisdiction over the habitual criminal proceedings clearly attached in this case because the State filed the original part II habitual criminal information and gave notice of its intent to proceed on the allegations in that information. As this Court ruled in Alexander, even though the original case has been dismissed, the State may properly proceed with habitual criminal proceedings in a second case without filing a new habitual criminal information as long as the State gives notice that it intends to proceed on the allegations contained in the part II information from the dismissed case. Alexander, 313 N.W.2d at 34, 37. Analytically, this is no different than what occurred in the case we consider today.

. Judge Salter’s concurrence in result correctly notes that defenses and objections may be preserved for appellate review if the trial court has been given an opportunity to correct claimed errors. See supra Judge Salter’s opinion ¶ 60. Although Medicine Eagle raised an objection before sentencing, SDCL 23A-8-3 (Rule 12(b)) further required, that the objection be raised before trial to provide the opportunity for corrective measures such as the "amendment of a pleading (or a new pleading).” See 5 Wayne R. LaFave et al., Criminal Procedure § 19.1(d) (3d. ed.2007). Medicine Eagle’s sandbagging here deprived the State of that opportunity to file a new or amended pleading. Therefore, under the rules, the objection was waived, relegating the objection to plain error review.