No. 23,025.

JESSIE D. DUNN, *Appellee*, v. JOHN MADDEN and C. E. COOPER,
*Appellants.*

SYLLABUS BY THE COURT.

1. AGENCY—*Sale of Oil and Gas Royalties—Commission—Findings—
Conflicting Evidence—Conclusive on Appeal.* Following the rule that
upon appeal the supreme court cannot weigh conflicting evidence nor
determine upon the credibility of witnesses, it is held that the finding
of the jury to the effect that defendants agreed to pay plaintiff a fixed
sum if she procured a purchaser for an oil and gas royalty, supported
as it was by substantial evidence, though contradicted by much evi-
·dence given in behalf of the defendants, is conclusive upon this court.

2. SAME—*Evidence Supports Finding of Partnership.* It is further held
that there is sufficient evidence to support the finding of the jury that
defendants were partners in the oil and gas transaction and in the
contract with plaintiff.

3. TRIAL — *Evidence — Instructions.* Errors assigned on rulings in the
admission of testimony and in the giving and refusal of instructions,
examined and held not to be of sufficient merit to warrant a reversal.

4. SAME   Where special findings will admit of an interpretation which
will harmonize them with and uphold the general verdict, that inter-
pretation should be given.

Appeal from Sedgwick district court, division No. 1; RICH-
ARD E. BIRD, judge. Opinion filed May 7, 1921. Affirmed.

*Kos Harris, V. Harris, John Madden,* and *C. E. Cooper,* all
of Wichita, for the appellants.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita,
for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Jessie Dunn recovered a judgment against
John Madden and C. E. Cooper, as commission for finding a
purchaser for a royalty interest in oil and gas production from
a certain tract of land, and defendants appeal.

It appears that C. E. Cooper had procured a ten-day option
on the royalty from the owner at a price of $25,000 and desired
to sell it an an advanced price, and $40,000 was named as his
selling price. It was alleged that he proposed to the plaintiff

who was acting as stenographer in the office of the defendants, that if she could find a purchaser for the royalty he would pay her $1,000. She suggested that A. J. Bellport, with whom she was acquainted, was a dealer in oil properties and that she might be able to induce him to buy it. Cooper dictated a letter to Bellport describing the property, present production and the prospects for still larger production, and stated that his asking price was $40,000, which letter the plaintiff signed and sent to Bellport. She wrote another letter to Bellport urging him to buy the royalty and stated that she had been promised a commission if she found a purchaser for it. In response to these letters Bellport came to Wichita and after negotiations he purchased the royalty for $30,500. Afterwards a controversy arose between the parties as to the liability of the defendants for the commission and hence this action was brought.

The main contention of defendants is that the evidence is insufficient to uphold the findings and verdict of the jury. That there were negotiations between the plaintiff and Cooper as to the part she was to take in inducing Bellport to purchase the royalty is not disputed, but they disagree as to the terms of the arrangement made and the compensation to be paid. Plaintiff's testimony was in effect that Cooper promised her $1,000 if she would induce Bellport to buy the royalty. Cooper's testimony was to the effect that if she procured Bellport to buy the property at a price of $40,000, he would make her a present of $1,000, and in this he was supported by the testimony of John Madden, jr., who stated that he was present and heard the conversation between the parties. There were some circumstances in the case confirmatory of the testimony of the plaintiff. Whether she was to have the stipulated commission for procuring Bellport to buy the property or to be paid upon the condition of a sale at the asking price of $40,000 was an important fact but only a question of fact, upon which the testimony was in direct conflict. It was a question for the triers of the facts. Some inconsistencies and improbabilities in the testimony of the witnesses for plaintiff are pointed out, but after all the result depended upon whether the jury and trial court gave credit to the witnesses of the plaintiff or to those of the defendants. The rule consistently followed in this court for more than a half century is that this court on appeal

cannot weigh conflicting evidence nor pass upon the credibility of witnesses. That is the function of the jury who are in a better attitude than this court to determine these questions. We cannot set aside the finding of a jury based on conflicting testimony because of the greater number of witnesses who gave adverse testimony nor because the evidence in record form may seem to us to preponderate against the finding. If the jury are unable to reconcile the evidence they must then accept that which they deem to be worthy of belief and reject the balance. It cannot be said that there was no evidence to sustain the theory of the plaintiff nor that it was not sustained by substantial evidence, and hence the finding of the jury is conclusive upon this court.

Another point of contention is that there was no evidence to uphold the finding that the defendant, Madden, was liable as a partner in the oil transaction. He insists that he had no other interest or part in the transaction than to advise Cooper, in whose name the option was held, as to the form of the contract and the legal questions involved in the transaction. Testimony to this effect was given. On the other hand, there was testimony tending to show that he was jointly interested with Cooper, and also of admissions made by both Madden and Cooper that the former had a partnership interest in the deal. There was evidence too that he took a part in the negotiations beyond that of giving legal advice as to the sale of the royalty, and further, that he shared in the profits of the sale. It may be said that testimony was given to the effect that the $2,400 paid to him from the proceeds of the sale was payment of a debt of gratitude owed to him by Cooper and was not paid as a share of the profits of the transaction. As the defendants contend, the fact that defendants were partners in the practice of law does not, of course, tend to show that they were partners in the oil transaction, but the court was careful to instruct the jury that before they could find that Madden was liable to the plaintiff it must be shown by a preponderance of the evidence that they were partners in this particular oil deal. On the evidence in the record it must be held that it is sufficient to warrant a finding of a partnership liability of Madden.

We find nothing substantial in the objections to rulings on the admission of evidence. Nor do we find anything substan-

Dunn v. Madden.

tial in the errors assigned on the giving and refusal of instructions. The instructions of the court fairly submitted the issues in the case to the jury.

Complaint is made of an answer of the jury to the following special question: "What service, if any, did the plaintiff perform to bring about or induce the sale of the oil royalty outside of the mere writing of said letter?" The answer first returned was: "Sale made through her efforts." The court required the jury to make a more complete answer as to the services rendered and their answer as finally returned was: "Sale made through her efforts. None." The meaning of the finding is reasonably clear and is that the only service performed or effort made by plaintiff to induce the sale was the writing of the letter. This letter it appears was sufficient to bring a purchaser to the defendants, and under the theory upheld by the jury as to the employment of the plaintiff, was sufficient to earn the promised commission.

It is contended that the findings relating to the partnership liability of Madden are insufficient. The following questions were asked and answers given:

"Q. 2. Was the sale of the oil royalty by Mr. Cooper on his own account and not a partnership transaction? A. No. .

"Q. 3. Did Mr. Madden ever employ the plaintiff to sell said oil royalty to Mr. Bellport? A. Yes.

"Q. 4. Did Mr. Madden ever know of the claim of plaintiff for compensation until long after royalty was sold? A. Yes.

"Q. 6. Did plaintiff ever tell Mr. Madden that he owed her any sum whatever for services rendered in the sale of royalty? A. Yes.

"Q. 7. Did Madden directly or indirectly have anything to do with the sale of said royalty to Mr. Bellport? A. Yes.

"Q. 8. If you answer the foregoing in the affirmative state wherein he had anything to do with said sale. A. In partnership business, yes, directly interested by approving of the contract."

One of the contentions is that these findings are without support in the evidence, but as already indicated this contention cannot be sustained.

Particular complaint is made of the last of the findings and it is argued that as made it supported the theory of Madden that he only acted as an attorney for Cooper in approving the form of the contract. The answer is not as definite as it should have been made, but it is manifest that the jury did not intend

to find that the only connection Madden had with the sale was the giving of legal advice to Cooper or the examination and approval of the form of the contract. The jury in effect found that his action was taken as a partner, and that he approved and agreed to the terms and conditions of the sale. It has been often decided that if special findings will fairly admit of an interpretation which will harmonize them with and sustain the general verdict, that interpretation should be given. The findings are to be interpreted in the light of the evidence, and there being testimony to support the finding as interpreted, it is held that no error was committed in refusing to set it aside.

Finding no prejudicial error in the proceedings, the judgment is affirmed.