UNIVERSITY OF MICHIGAN, APPELLANT, v. DANIEL L. MCGUCKIN ET AL., APPELLEES.

FILED MARCH 19, 1902.   No. 10,080.

Commissioner's opinion, Department No. 3.

1. **Marriage:** CONTRACT: STATUS. The marriage relation is, in only a limited, qualified sense, contractual. It is a social *status*, for the assumption of which by persons of the requisite legal capacity, all that is essential is their free consent.

2. ——: ——: LANGUAGE: CONDUCT. The consent requisite to the creation of the marriage relation need not be expressed in any especial manner or by any prescribed form of words, but may be sufficiently evidenced by any clear and unambiguous language or conduct.

APPEAL from the district court for Douglas county. Heard below before KEYSOR, J. Rehearing of case reported in 62 Nebr., 489. *Reaffirmed.* HOLCOMB, J., dissenting.

*Wright & Stout,* for appellant.

The fact of copulation after a promise *per verba de futuro* is simply evidence from which the court may presume a new promise or a promise *de præsenti;* and the fact of living together is not itself marriage, but is simply evidence from which the court may presume that a promise was made. This presumption, which ordinarily would arise from continued copulation, in the case at bar, is overcome by the positive finding that no new promise was made and the relation was meretricious at its inception. Having been meretricious at its inception, it is presumed to continue meretricious until there is positive evidence of a change or a new promise. So that in this case, even if the court had not specifically found that there was no change and no promise *de præsenti* and no promise at any time when the parties were capable of entering into the relation, the court could not find from the findings of fact that any new promise existed. As to what constitutes a common-law marriage: *Schuchart v. Schuchart,* 61 Kan., 597; *United States Trust Co. v. Maxwell,* 26 Misc. Rep. [N. Y.], 276; *Williams v. Herrick,* 43 Atl. Rep. [R. I.], 1036, and authorities cited on former argument, 62 Nebr., 489.

*I. R. Andrews* and *J. J. Breen, contra.*

AMES, C.

This cause is resubmitted upon arguments and briefs upon a rehearing granted from a former decision in the

same cause, the opinion in which was filed on the 10th
day of July, 1901. The case was submitted upon a record
containing the pleadings and findings of fact of the trial
court, only.

The principal question discussed upon the reargument,
and the only one with which we think it requisite to deal
in this opinion, is that of the validity of the alleged mar-
riage between the appellees Anna McGuckin and Daniel
L. McGuckin. The findings of fact relative to this inquiry
are copied in the former opinion and need not be repeated
here. The district court found, as a conclusion of law,
that they were sufficient to establish the validity of the
marriage. In this conclusion this court in its former
opinion concurred. The facts found are many of them
evidential, rather than ultimate, in character. The begin-
ning of the cohabitation was meretricious, each of the
parties having a lawful spouse then living; but both these
obstacles were soon afterwards removed by decrees of
divorce, and thereafter the parties not only continued for
a long term of years to live together as husband and wife,
and to enjoy the repute of that relation, but continuously
represented themselves to the public and individuals as
being such. During the time, and before the making of the
mortgage in question, five children were born of the union,
whom their parents unitedly represented to the public, and
caused to be baptized into church, as the children of lawful
wedlock. That these facts and certain others, recited in
the finding, would, if standing alone, be sufficient evidence
of marriage, can not be doubted, and is explicitly admitted
by counsel for the appellant in both brief and argument.
But in connection with them, and as a part of the same
finding in which they are set forth, the court also found
that, although the parties made promises to marry prior to
the obtaining of the divorces, yet that such promises "were
the only promises ever made, and that no new promise was
made after the obtaining of the divorce by Daniel L. Mc-
Guckin, nor was there any apparent change in their man-
ner of living or holding themselves out as husband and

wife." Counsel thereupon insists that a lawful marriage could have had its inception only in a promise or agreement of marriage after the removal of the legal obstacles thereto; that the evidential facts found are of no significance, except as tending to establish the making of such a promise or agreement, or of raising a presumption that one had been made, and that whether one had been made was the only ultimate fact in controversy; and that the language quoted above from the finding, being an express negation of such promise, is decisive of the case, so that the evidential facts found are immaterial. In other words, it is contended, as we understand counsel, that a single finding by the court that there was no promise or agreement after obtaining of the divorces would have had the precise legal weight of the actual finding, and that it is not a material inquiry whether the court recited all or only part of the evidence establishing this ultimate fact, because it was not obligatory upon him to recite any of it. We can hardly believe that this is the interpretation which the trial judge himself put upon his findings, and we are not convinced that it is the true one to be given to that document. In our opinion, an express verbal promise or agreement of marriage is not in all cases indispensable under our law. The statute enacts (Compiled Statutes, ch. 52, sec. 1) : "In law, marriage is considered a civil contract, to which the consent of the parties capable of contracting is essential." The main purpose of this definition is, we think, to negative the idea that marriage is an ecclesiastical sacrament, or that in the eye of the law it is controlled by the mandates or dogmas, or subject to the observance of the rituals or regulations of any particular churches or sects. That it is not a contract resembling in any but the slightest degree, except as to the element of consent, any other contract with which the courts have to deal, is apparent upon a moment's reflection. This was pointed out by the late Mr. Justice Field, with his usual clearness of expression and wealth of illustration, in *Maynard v. Hill*, 125 U. S., 190. What persons establish by entering into

matrimony, is not a contractual relation, but a social *status;* and the only essential features of the transaction are that the participants are of legal capacity to assume that *status,* and freely consent so to do. It may be true, as counsel for appellant contends, that the indispensable consent can not be implied, but must in all cases be expressed; but it does not follow that it must be expressed in any especial manner, or by any prescribed form of words. The statute above cited dispenses with all ceremonials,— verbal as well as other. It was probably this idea which was in the mind of the trial judge when he penned the words quoted above from his finding. In other words, it appeared to him, as it appears to us, that there was sufficient evidence that after the obtaining of the last divorce the parties consented to assume the *status* of husband and wife, although they made no explicit verbal contract or agreement so to do. Doubtless the very phrase which counsel for appellant regards as establishing the ultimate, conclusive and solely essential fact, the trial judge looked upon as slightly, if at all, material. So construed, his finding is inconsistent neither with itself, nor with the conclusion of law and judgment, and that this is its true interpretation is to our minds perfectly clear. As has already been said, it is conceded, and, indeed, it could not well be disputed, that there is in the finding, aside from this single expression, sufficient evidence of the consent of the parties, after the removal of their disabilities, to assume the marriage relation. That evidence is not rebutted by the mere negative fact that they omitted to express that consent by formal words. ·The ultimate fact is not that the parties made a formal promise or contract, but that they mutually consented to a social relation. This consent may be expressed by conduct as effectively as by words, and proof of the conduct is proof of the consent. In both cases the conclusion drawn by the court is from an implication, but in either case all that is required is that the expression be clear and unambiguous. In neither case can it properly be said that the contract or the consent is implied.

It is recommended that the former decision of this court be adhered to, and the judgment of the district court affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the former decision of this court be adhered to, and the judgment of the district court

AFFIRMED.

HOLCOMB, J., dissents.

NOTE.—Marriage, as distinguished from the agreement to marry and from the act of becoming married, is the civil status of one man and one woman legally united for life, with the rights and duties which, for the establishment of families and the multiplication and education of the species, are, or from time to time may thereafter be, assigned by the law to matrimony. So in substance the present author defined in his earliest and all subsequent writings on the subject, and the correctness of the definition has become generally acknowledged. And the old formerly standard definitions which, taking no note of the diverse meanings of the word "marriage," termed it without discrimination a "contract," have been discarded. Now, in the law, a definition is legal doctrine epitomized. To ascertain, therefore, whether or not a proposed definition is correct, we do not compare its terms with those of prior definitions, with *dicta* of the judges, or with words of other learned persons. The test is, whether or not it accurately pictures, in miniature, not what the courts say, but the sum of what they adjudge. And in the barbarous condition of our legal literature, alike in the past and in the present, often is one thing uttered from the bench, and written down as law in our text-books, and the directly opposite is adjudged. A commentator on the law, therefore, should define legal doctrine according to its actual form in practice, not in any erroneous words which a judge or predecessor may have employed. Hence, we know that the foregoing definition of marriage is correct, because it accurately describes what the courts constantly decide. That marriage executed is not a contract we know, because the parties can not mutually dissolve it, because the act of God incapacitating one to discharge its duties will not release it, because there is no accepted performance which will end it, because a minor of marriageable age can no more recede from it than an adult, because it is not dissolved by a failure of the original consideration, because no suit for damages will lie for the non-fulfillment of its duties, because its duties are not derived from its terms but from the law, because legislation may annul it at pleasure, and because none of its other elements are those of contract, but all are of status.

24

Bishop, Marriage, Divorce and Separation, vol. I., 11, 12 and 13. *Campbell v. Campbell (Breadalbane Case)*, 1 L. R. Scotch & Divorce Appeals, 182; *Collins v. Voorhees*, 47 N. J. Eq., 315. A careful examination will show a distinction between these cases. The *Breadalbane Case* afterward came up in the house of lords on the right of a peer to his seat. He was given his seat. *Breadalbane Peerage Claim*, 1 L. R. Scotch & Divorce Appeals, 259. See, also, *De Thoren v. Attorney General*, 1 L. R. Appeal Cases, 686.

A legal Roman marriage was called *justœ nuptiœ, justum matrimonium*, as being conformable to *jus* (civile) or to law. A legal marriage was either *cum conventione uxoris in manum viri*,* or it was without this *conventio*. But both forms of marriage agreed in this: there must be *connubium* between the parties and consent. Biblical, Theological and Ecclesiastical Cyclopædia, vol. V., 799.

A majority of catholic theologians contend that, in marriage, the parties themselves are the ministers of the sacrament. Addis & Arnold, Catholic Dictionary, p. 546.—REPORTER.