WILLIAM SONNEMAN, APPELLEE, V. BURFORD J. ATKINSON, APPELLANT.

FILED OCTOBER 23, 1931. No. 27880.

*O. E. Bozarth* and *Beeler, Crosby & Baskins*, for appellant.

*George N. Gibbs, William E. Shuman* and *Halligan, Beatty & Halligan, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and BLACKLEDGE, District Judge.

GOSS, C. J.

Plaintiff sued defendant for damages for alienating the affections of plaintiff's wife. The jury returned a verdict for $20,000. Plaintiff remitted the excess over $15,000 and the court entered judgment for the latter sum. Defendant appealed.

William Sonneman, 23, and Artie Duckworth, 18, were married in North Platte on December 23, 1916. They had two children, a son, born February 24, 1920, and a daughter, born July 5, 1922. Until May 19, 1927, they lived together on rented farms in Lincoln county. In March of that year they had moved to a farm owned by defendant, who had several thousand acres contiguous to the house in which plaintiff and his family lived. He spent much time there looking after his interests. While there he boarded with the Sonnemans. He was married and knew plaintiff and wife were married. There was evidence from which the jury might infer that his attitude toward plaintiff's wife was not entirely Platonic and that it was not repulsive to her. It should be said, however, that both of them deny any wrongdoing, and the wife, particularly, accounted for plaintiff's conclusions by testifying to his unreasonable suspicion of her and his unfounded jealousy of other men. Events occurring later in the season probably had more to do in bringing about the verdict of the jury.

On May 19, 1927, Mrs. Sonneman left for Iowa with her two children to visit her sisters. Her husband bought the tickets and put his family on the train. She had sold her chickens for $27 and he had borrowed $30 from Atkinson

to provide money for the trip. He testified that he kissed her good-bye. She says he tried to kiss her but she dodged him. She did not intend to return to him and says she so advised him before she left. He testified he was willing she should go on the trip; that she had not informed him she did not intend to return and he understood she was to stay only until about harvest time. She remained in Iowa about five weeks and then went to Omaha with her children, where for some weeks, beginning on June 23 or 24, 1927, she and her children lived in a so-called "apartment" at 212 North 25th street. They occupied two rooms in a story and basement duplex house of eight rooms, owned by one Altman, who lived in the other duplex and conducted a grocery store nearby. The furniture had belonged to a Mrs. Atherton who was a lessee of the duplex. The sale of the furniture for $250 was negotiated on June 23, 1927, by a real estate broker to one Buckley, who came to the office of the broker in company with the defendant and with plaintiff's wife, who was introduced as Mrs. Duckworth. Buckley lived in Omaha and had been a long-time friend of defendant. He died before the trial and his testimony does not appear. About September 28, 1927, when the house was given up by the parties involved in this action, the furniture was sold and conveyed for a consideration of $200, as shown by a written agreement between Artie Duckworth, described as the owner, and her purchaser. While plaintiff's wife and children occupied rooms at this place, she was known to the other tenants as their landlady. The rent for the whole house was paid by her and the three other occupants of apartments or rooms paid their rent to her. At the beginning and through much of the time while plaintiff's wife lived there in the summer and early fall of 1927, defendant lived there. At the outset the narrowness of the world was exemplified by the discovery that a man and wife who had lived in North Platte occupied one of the apartments. The man had long known defendant, who, meeting him in the house and being recognized, informed him the young woman was his daughter, whose husband was of no account, and he had

bought the place for her, so that he could stay there when he came down to sell his cattle. As soon as this came to her attention, Mrs. Sonneman stated she was Mrs. Duckworth and as such she was known about the place. Witnesses testified to acts of affection between the two while at this place. Plaintiff did not know his wife and children had left Iowa and had gone to Omaha. The facts that both were legally married to other spouses, that they were not father and daughter and were not related at all, that they were surreptitious in their plan of living, and all the circumstances not necessary or desirable to relate here, sufficiently justified the conclusion of the jury that the defendant had designedly alienated the affections of plaintiff's wife. The jury being the triers of fact, we cannot disturb the judgment unless prejudicial error occurred in the trial court.

The court admitted in evidence a decree of divorce, dated December 15, 1928, in a suit between Artie Sonneman and William Sonneman, for the purpose only, as he stated, of showing that the parties were married and are now divorced. See the proviso making such a decree competent evidence. Comp. St. 1929, sec. 20-1203.

The first alleged error by the court is that he failed to give an instruction requested by defendant on the subject of mitigation of damages. It was to the effect that any unhappiness between the plaintiff and his wife, not induced by defendant, should be considered in mitigation or in reducing the amount of damages. There was a paragraph of the tendered request telling the jury what evidence would be received in such a case. It had been followed in receiving the evidence but was not proper in an instruction. The court did not err in refusing to incorporate that mere rule of evidence in an instruction to the jury. The court in his own instructions to the jury clearly told them in various forms that the defendant could be held liable in damages only where his acts were the controlling cause of the plaintiff's loss of the consortium of his wife; that if such loss was brought about either by the acts of plaintiff or by the voluntary act of the wife and

in either case without the occurrence of conduct on the part of defendant designed to cause such loss, then the acts of the defendant could not be the controlling cause; and that the defendant can be held responsible only for that loss of consortium of which his acts were the controlling cause. *Dunbier v. Mengedoht,* 119 Neb. 706. In another instruction, consortium was defined, and in another, stating the damages if the jury found for the plaintiff, the jury were carefully limited to such damages as they found from the evidence would fairly compensate plaintiff for that loss of consortium of which the acts or words of defendant were the controlling cause. They were warned not to allow any damages by way of punishment.

"Where instructions to the jury are requested and refused, but the instructions given by the court on its own motion had the same effect as those refused, error does not result therefrom." *Payne v. Clark,* 117 Neb. 238.

We are of the opinion that the instructions as given by the court embodied the principles applicable to the issues and the evidence received as to damages, including any mitigation thereof by reason of things not induced by defendant.

Appellant assigns errors because other instructions were requested and refused and because of instructions given by the court on its own motion. The issues of fact and of law were simple and were minor compared with the feeling evidently apparent on the trial, as often happens in cases of this character. The court appears to have allowed all admissible evidence to be introduced on both sides and to have instructed the jury fairly and fully on the real issues. Without discussing these assignments at length, as would be necessary to reach the conclusions at which we have arrived, we content ourselves by saying that they present no prejudicial error.

The jury were charged with misconduct, but it does not appear in what way it prejudiced the defendant. Counsel for plaintiff are also charged with misconduct in respect of their arguments to the jury. Both parties had able, vigorous and apparently zealous advocates. In the tempera-

ture reached near the climax of the trial they went about as far as permissible. The court seems to have held them as nearly to the proper standards of conduct as could have been done in the circumstances. The record of the argument indicates that he treated them impartially, and we do not see that defendant was prejudiced by, or is in a position to complain of, what occurred in the argument to the jury.

It appears from a ruling of the trial court that much of the complaint arises from the fact that the objectionable remarks were evidently made in answer to the argument of the complaining party who was guilty of the first offense in that regard. "Argument of counsel based on matters not in evidence will not be reviewed if made in reply to similar argument of adverse counsel." *Nebraska Savings & Exchange Bank v. Brewster,* 59 Neb. 535. See *Stratton v. Dole,* 45 Neb. 472.

Appellant argues that the judgment is excessive, and cites *Phelps v. Bergers,* 92 Neb. 851, in which the trial court reduced a verdict of $16,666.67 to $10,000, and this court reversed the $10,000 judgment because it was not supported by the evidence. The facts are materially different. While the judgment in the case at bar is large, yet the jury, believing the evidence on behalf of plaintiff, were justified in assessing the damages at a very substantial sum. We will not say that the judgment is excessive in the circumstances found by the jury to be true.

The judgment of the district court is

AFFIRMED.