No. 41,496

S. EVERETT DENNIS and NINA E. DENNIS, *Appellees,* v. CARL S. SMITH and JUANITA D. SMITH, husband and wife, *Appellants.*

(352 P. 2d 405)

Opinion filed May 14, 1960.

*Kenneth Clark,* of Hill City, argued the cause, and *W. H. Clark* and *Marion W. Chipman,* of Hill City, and *Francis W. Brown,* of Denver, Colorado, were with him on the briefs for appellants.

*Elmer E. Euwer,* of Goodland, argued the cause, and *Jack E. Lyman,* of Scotts Bluff, Nebraska, was with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to quiet title to 10,289 acres of land in Sherman County, Kansas, known as the Smith Ranch. A jury was waived and trial was by the court. Judgment was in favor of the plaintiffs and the defendants have appealed.

The appellees are hereafter referred to as plaintiffs or Dennis, and the appellants as defendants or Smith.

On January 24, 1958, the plaintiffs filed their petition alleging two causes of action. The first cause of action described the land in question and alleged they were the owners thereof by virtue of a warranty deed executed by the defendants Carl S. Smith and Jaunita D. Smith on August 10, 1957; that on January 7, 1958, the defendants filed an "Affidavit and Notice of Interest in Real Estate" in the office of the register of deeds of Sherman County, which encumbered their title, and asked that the affidavit be canceled and their title quieted. The second cause of action sought damages in the sum of $21,600 for slander of title.

The defendants filed an answer and cross petition alleging an oral partnership agreement between the parties in consideration of which the defendants executed the warranty deed of August 10, 1957, and asked the court to find the existence of the partnership and adjudge its termination; that an accounting be had between the parties, and that the defendants be adjudged the owners of a one-half interest in all the land. In the alternative, the defendants asked that the warranty deed be set aside because of a failure of consideration. The cross petition alleged a second, third and fourth cause of action pertaining to hog wire, an ensilage cutter and a snow fence, respectively, all of which the defendants claimed was due them either in kind or in damages. The issues were joined by the plaintiffs' reply denying all the new matters alleged in the answer and cross petition.

The trial required four days and the court permitted the introduction of all testimony pertaining to the execution of the warranty deed and for negotiations of all the parties. Pertinent portions of the testimony are summarized: The defendants were the owners of the land in question and had previously executed a mortgage thereon to the Travelers Insurance Company, which was foreclosed in the district court of Sherman County, Case No. 7223, and they

possessed the right to redeem the land until August 11, 1957, which was Sunday, upon the payment of $166,187.54. Howard Brass was the owner of the sheriff's certificate of purchase.

Smith had approximately 3,700 acres of milo growing upon the land which he would lose unless redemption was made, and, during the spring and summer he had expended $24,000 in preparing the land for the milo crop and summer fallowing 2,840 acres for seeding wheat in the fall, which he would also lose unless redemption was made.

Prior to August 3, Smith had entered into negotiations with Vyrl W. Levan of Ness City for the sale of the land under similar terms and conditions as those entered into with Dennis, hereafter related, but on July 31, Levan withdrew from his contract because he was unable to complete financial arrangements.

On August 3, Smith telephoned Dennis at Scotts Bluff, Nebraska, his home, and asked him to come to Goodland to discuss redemption. Dennis had never seen the Smith Ranch and knew nothing about it until he arrived in Goodland August 5. Dennis and Smith spent a day and a half inspecting the ranch, discussing production, and other related matters. Smith informed Dennis that his financial situation was impaired due to the foreclosure action, other actions then pending and outstanding judgments against him, and that he was financially unable to effect redemption.

After Dennis arrived in Goodland on August 5, Smith told him Ira Crouse, a realtor in Dodge City, was interested in trading for the ranch. While Dennis and Smith were conferring in a motel in Goodland on August 8, concerning the ranch, Crouse called Smith by long distance telephone and offered $210,000 in cash plus a business building in Wichita worth $60,000 for the ranch. Smith advised Dennis of the call, which he took at another telephone, and the evidence is conflicting as to conversations had between Smith and Dennis before and after the call. Smith testified that before he went to take the call Dennis told him not to sell the ranch, that money was being arranged and "we are going ahead and pay it off and redeem it." Dennis testified that he did not advise Smith one way or another, and that when Smith returned he told Dennis he had declined Crouse's offer since, "he didn't want to take in the property that was offered at Wichita."

Also, the evidence was conflicting regarding the parties' negotiations leading up to their oral agreement. Smith testified it was orally agreed that Dennis would make redemption of the ranch,

pay the defendants' Kansas Income Tax lien, and finance the purchase of cattle to run on the ranch; that the parties would operate the ranch on a partnership basis and in the event of a drouth or unprofitable operation of the land it would be sold and Dennis would first recover the money he had invested and any surplus would be divided equally between the parties. Further, that he (Smith) agreed to and did place in escrow $10,000 to protect the land against possible judgment liens from two suits then pending against the defendants in Sherman County. Dennis denied that any partnership or joint venture agreement was entered into, but stated he agreed to purchase the defendants' right of redemption for the following consideration: The redemption of the property, payment of the defendants' income tax lien on the land, and the 1954, 1955 and 1956 taxes, penalties and interest due thereon and that Smith was to receive two-thirds of the growing milo crop and have the right to seed 2,840 acres to wheat and harvest the crop in 1958, retaining a two-thirds share.

On the morning of August 10, Dennis and Smith had a conversation in an automobile outside the office of Smith's attorney. Smith stated he did not think his wife would sign the warranty deed unless Dennis permitted them to retain one-fourth of the mineral rights and he also asked Dennis for an option to repurchase the ranch. Dennis replied, "he would not consider that, because to do so would tie my hands to do the things that I might want to do." Smith again referred to Crouse's offer and Dennis told him he was not interested in buying the ranch on any terms other than those agreed to, and that he would go to Dodge City to help Smith close the Crouse deal if he wanted him to. Smith told him he did not want to do that. Dennis then stated that he did not want to hear any more about other deals or anything in the past.

In the early afternoon of that same day the parties met in the office of Smith's attorney to complete negotiations and execute the warranty deed. Mrs. Smith asked Dennis about retaining the use of pasture land and for an option to repurchase the ranch. Dennis stated that was not in their agreement; that he did not want to deal that bad, and that he was going home. He put his hat on and walked out of the office. Smith's attorney brought him back for further discussion and the defendants stated, "we will sign the deed." Dennis agreed to buy the revenue stamps. Later in the afternoon Dennis purchased revenue stamps in the amount of $198 and filed the war-

ranty deed of record in the office of the register of deeds; paid to the clerk of the district court $166,187.54 to redeem the land and $9,015.84 on the defendants' Kansas Income Tax lien, and paid to the county treasurer $12,172.12 for delinquent taxes, penalties and interest upon the land. Payments made by Dennis to the clerk of the district court and to the county treasurer were made by check.

On August 13, Howard Brass, the owner of the sheriff's certificate of purchase, filed his application asking the district court to declare Dennis' redemption invalid and that the sheriff be directed to issue a sheriff's deed to him. On September 11, Brass' application was denied. During the hearing of that motion, Smith filed his affidavit in which he stated that on August 10, 1957, for a valuable consideration, he and his wife conveyed by a general warranty deed to plaintiffs all the land involved in the foreclosure proceedings and that Brass' application had placed a cloud on Dennis' title to the land.

Henry Karpf testified for the plaintiffs that on August 9, he had a conversation with Smith who told him he was selling the land to Dennis and that he was happy to see Dennis get the ranch as it was the only opportunity he would have to save anything out of the milo crop or the summer fallow. Noel Coverett testified for the plaintiffs that on November 8, Smith told him in Smith's grain elevator office in Goodland that he had sold his ranch to Dennis and was glad he made the sale as he was able to save his milo crop; that he (Coverett) tried to buy some farm machinery from Smith but Smith said, "No, that he wanted to try and lease the ranch for the next year, and that if he did, he would use that machinery."

Several witnesses testified on behalf of the defendants and stated that the reasonable and fair market value of the land on August 10, 1957, was $300,000.

While findings of fact were not requested by either party, the trial court, upon its own initiative, made findings of fact and conclusions of law in a written opinion, and we summarize and quote pertinent portions thereof: On August 8, 1957, the parties entered into a contract whereby the plaintiffs agreed to purchase and the defendants agreed to sell their right of redemption in the land upon the following terms and conditions: The plaintiffs were to pay the Kansas Income Tax lien against the defendants and permit them to take two-thirds of the milo crop growing on the land and to plant the land to wheat in the fall of 1957, taking two-thirds of the wheat at harvest time in 1958; the defendants were to execute the warranty

deed and place $10,000 in escrow to protect the land from judgment liens in cases then pending against them by one Duncan and one Nordmann.  And,

"3.  That the defendant's credit rating was nil.  That the defendant had a reputation as a 'professional litigant.'  That the plaintiffs purchased the Right of Redemption which required $166,187.54; that that amount of money in cash was not available in the City of Goodland.  That the plaintiffs knew or should have known that litigation would be required with the holder of the Certificate of Purchase to effect the redemption.  That the plaintiffs knew or should have known that this case would be required in order to effect the possession of the property.

"4.  This Court is unable to make any finding as to the value of plaintiffs' purchase.  Testimony was introduced that the land was worth approximately $300,000.00, but no testimony was introduced as to the value of the Right of Redemption.  No testimony was introduced as to the cost of the litigation with the holder of the Certificate of Purchase, or the value of the lease given to the defendants.  It would therefore, be mere speculation on the part of this Court to make a finding as to the value of the redemption, particularly since the defendants introduced testimony that could be construed that the Right of Redemption had no value at that late date and under the circumstances.

"5.  That no believable evidence was introduced as to any partnership agreement between the parties."

In harmony with its findings, the trial court rendered judgment quieting plaintiffs' title to the land as against the defendants; granted the plaintiffs immediate possession subject to the right of the defendants to harvest the wheat crop of 1958 of which the defendants were entitled to two-thirds and the plaintiffs one-third, and concluded that the contract entered into between the parties for the sale of the right of redemption was not inequitable.  Judgment on the plaintiffs' second cause of action was entered in favor of the defendants.

At this juncture, it is sufficient to say that the second, third and fourth causes of action alleged in the defendants' cross petition were either adjusted during the trial or are not issues in this appeal.

Stripped of all inconsequentials, the defendants contend that when all the evidence is fairly considered, the transaction between the parties was a scheme on the part of Dennis to get Smith's property for almost nothing unless they had in mind a partnership agreement, and, that if the transaction was in fact a sale of the defendants' right to redeem the land, the consideration was so inequitable that the warranty deed should be set aside upon the condition that the defendants reimburse Dennis for the amounts expended in their behalf.  In support of their contention they here argue (1) that

the district court tried the case upon an erroneous theory of law by refusing to consider evidence of the market value of the land on August 10, 1957; (2) that its findings of fact were not supported by evidence; (3) that its conclusions of law were erroneous and not supported by and were contrary to the evidence, and (4) that it erred in overruling their demurrer to plaintiffs' evidence.

We shall discuss the defendants' first point. The findings of the district court may not be said to infer that it did not give consideration to the value of the land. The court specifically found that testimony was introduced that the land was worth approximately $300,000, but that it was unable to make any finding as to the value of plaintiffs' purchase since no testimony was introduced as to the value of the right of redemption. In that connection, Smith testified that when the warranty deed was executed on August 10, 1957, he estimated that 3700 acres of milo growing upon the land would yield 60,000 bushels and that, at the market value of 81 cents per bushel, his two-thirds share in the early fall and winter of 1957 would amount to $32,400; further, that he was advised the wheat crop to be planted in the fall of 1957 would reasonably yield 25 bushels per acre, or 71,000 bushels, and that at the market value of $1.65 per bushel, his two-thirds share would amount to $78,100. He further testified that he would have lost the value of those crops if redemption had not been made, and in addition, he would have lost approximately $24,000 which he expended in preparing the land and planting the milo and in summer fallowing the wheat land.

We think the district court correctly held that all the defendants sold was their right of redemption. The evidence was undisputed that Dennis made a capital outlay of $186,429.55 in redeeming the land, purchasing revenue stamps, paying the defendants' Kansas Income Tax lien (the clerk of the district court later paid $7,871.59 to discharge the lien), and paying the delinquent ad valorem taxes, penalties and interest. It will be readily observed by a simple mathematical calculation that when the value of the crops, which Smith himself estimated to be $110,500, is added to the amount Dennis paid, the defendants received approximately $297,000 for their interest in the land. Contrary to their contention, it is evident that the alleged oral offer of Ira Crouse was less in value than the sale made to the plaintiffs. Furthermore, it is the rule in this jurisdiction that a purchaser for value of real estate is not required to pay an adequate price, he need pay only a substantial consideration

(*Ennis v. Tucker,* 78 Kan. 55, 62, 96 P. 140; *Morris v. Wicks,* 81 Kan. 790, 792, 106 P. 1048; *Hyndman v. Woman's. Foreign Missionary Society,* 146 Kan. 34, 40, 68 P. 2d 645). The defendants' contention that the district court tried the case upon an erroneous theory of law is not well founded. Under the facts and circumstances an adequate consideration passed to the defendants as a result of the sale of their right of redemption to the plaintiffs.

We shall discuss together the defendants' second and third points that the district court's findings of fact were not supported by evidence and that its conclusions of law were erroneous and not supported by and were contrary to the evidence. While the testimony was conflicting, there was evidence by the defendants and their witnesses, which, if believed by the district court, would tend to support the allegations of their cross petition that a partnership agreement was entered into, but, the fact remains, the district court did not choose to believe that testimony, and the record contains more than ample evidence to support the finding that the defendants sold to Dennis their right to redeem the land for a valuable consideration, and that no partnership agreement existed.

The defendants in substance request this court to reweigh the evidence and determine from the cold record which has the greater probative value. That is not the function of an appellate court. As the trier of the facts, it is the province and duty of the district court to determine what weight and credence will be given to the testimony of the witnesses on both sides of a lawsuit. Appellate courts cannot determine from the record submitted, the persuasiveness of the testimony which a district court may have believed. On this point, the controlling rule is well stated in *Fine v. Neale Construction Co.,* 186 Kan. 537, 352 P. 2d 404, this day decided, where it was held:

"Where findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the supreme court's power begins and ends with the determination whether there is any competent substantial evidence to support them, and where findings are so supported they are accepted as true and will not be disturbed on appeal, and in such a case it is of no consequence that there may have been much contradictory evidence adduced at the trial which, if believed by the trial court, would have compelled entirely different findings of fact and an entirely different judgment."

See, also, *Dunn v. Madden,* 109 Kan. 94, 197 P. 1116; *In re Estate of Gereke,* 165 Kan. 249, 195 P. 2d 323; *Stoskopf v. Stoskopf,* 173 Kan. 244, 245 P. 2d 1180; *Smith v. Wichita Transportation Corp.,* 179 Kan. 8, 293 P. 2d 242; *Stephenson v. Wallis,* 181 Kan. 254, 311

P. 2d 355; *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184 Kan. 202, 336 P. 2d 463; *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184 Kan. 209, 336 P. 2d 469, and *Fine v. Telephone & Power Supply Co.,* 185 Kan. 383, 345 P. 2d 616.

The defendants did not move to set aside any of the findings of fact upon the ground they were not supported by evidence or for any other reason, nor did they move for contrary or additional findings of fact. No errors of any kind were urged until the motion for a new trial was filed, one of the grounds being "The judgment is in whole or in part contrary to the evidence," which motion was duly overruled. We think the findings of fact were supported by substantial competent evidence and clearly support the judgment of the district court.

The defendants lastly contend the district court erred in overruling their demurrer to the plaintiffs' evidence. In argument advanced on this point, the defendants insist there was no evidence whatsoever to support the plaintiffs' causes of action since Dennis only testified he was owner of the real estate by introducing the warranty deed and that he had not been able to lease the land for oil and gas or place the land in the government soil bank program because of the defendants' affidavit and notice of interest filed of record; that Dennis' action being in equity, his evidence had to reveal he had first done equity, and that all the evidence showed inadequacy and failure of consideration for the warranty deed, which prevented equity from granting him the relief sought; further, that plaintiffs neither alleged nor proved any malice on the part of the defendants in filing their affidavit and notice of interest in the land. The point is not well taken. With respect to plaintiffs' possession, the district court's findings justified the legal conclusion that the warranty deed conveyed full legal title to the plaintiffs and that they were the owners of the land; that the arrangement between Dennis and Smith made Smith the plaintiffs' tenant, and that they were in possession of the land through Smith, which entitled them to bring the action (*Brown v. Brooks,* 142 Kan. 556, 558, 51 P. 2d 32). Furthermore, the court had before it not only the plaintiffs' petition, but the defendants' answer and cross petition alleging a partnership arrangement and claiming the ownership of an undivided one-half interest in the land, as well as all the evidence which had been offered by both parties. In that situation, the question of which of the parties was in possession of the land was of but little consequence so far as the jurisdiction of the district court was con-

cerned (*Reitz v. Cooper,* 123 Kan. 755, 256 P. 813), and it correctly ruled that the contentions of the parties presented a controversy as to the validity of the warranty deed and of the defendants' alleged partnership arrangement and their interest in the land, which should be determined (*Walker v. Rooney,* 135 Kan. 158, 163, 9 P. 2d 973).

Concerning the claim of inadequacy and failure of consideration for the warranty deed, we need not reiterate the evidence or the findings of the district court. As previously indicated, there was substantial competent evidence to sustain the findings that the plaintiffs purchased the defendants' right of redemption for a valuable consideration and that they were the owners of the land.

While it is true in *Stark v. Chitwood,* 5 Kan. 141, it was held that an action for slander of title cannot be maintained without showing malice and want of probable cause which the plaintiffs' evidence failed to disclose, nevertheless, since judgment was rendered in favor of the defendants upon the plaintiffs' second cause of action, they may not now complain the district court erred in overruling their demurrer to plaintiffs' evidence.

Other points were briefed and argued, but it would serve no useful purpose to discuss them in view of the conclusions heretofore announced.

We find no error in the conclusions of the district court and its judgment is affirmed.

It is so ordered.