RALPH DELP AND DOROTHY DELP, APPELLEES, v. GRETCHEN LAIER, APPELLANT.

288 N. W. 2d 265

Filed February 5, 1980. No. 42460.

Bernard B. Smith and David B. Smith of Smith & Smith, for appellant.

John Wightman and Michael L. Bacon of Wightman, Fallesen & Bacon, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This is an appeal by the defendant, Gretchen Laier, from a judgment entered by the District Court for Gosper County, Nebraska, on August 9, 1978, awarding damages in favor of the plaintiffs, Ralph Delp and Dorothy Delp, husband and wife, in the amount of $1,203.85, and from the further order of the District Court permanently restraining and enjoining the defendant from discharging waters upon plaintiffs' land except at specific locations and from permitting any waters which may accumulate by reason of earthwork or other structures constructed by

the defendant on defendant's land to run over a road located on plaintiffs' land near its southern boundary. Our examination of the entire record leads us to the conclusion that the trial court was correct, and therefore we affirm the judgment in all respects.

The record discloses that the defendant is the owner of certain real estate located in Section 21, Township 8 North, Range 23 West of the 6th P.M., Gosper County, Nebraska. The plaintiffs own property located immediately north of defendant's property, legally described as the south half of Section 16, Township 8 North, Range 23 West of the 6th P.M., Gosper County, Nebraska. The defendant's northern boundary line is coincident to the plaintiffs' southern boundary line. The natural grade of the defendant's property is generally from the southern portion of her property toward plaintiffs' property, though the evidence discloses that the property likewise slopes from west to east. At the place where the properties touch, the south-to-north slope continues for several hundred feet and then generally levels off across plaintiffs' property, though it still has a slight west-to-east grade.

A canyon runs southwest to northeast upon plaintiffs' property at a point north and slightly east of where defendant constructed certain pits. Fingers of the canyon extend down into defendant's property near the site of the pits. The fingers were caused by erosion over the years. Water falling on defendant's land flowed in one of two directions. A small part of the defendant's land drained to the west and onto plaintiffs' land through a culvert located in the northwest corner of the defendant's land. Most of the remainder of defendant's land drained from south to north and from west to east into the fingers of the canyon located in the northeast portions of the property.

Sometime in 1976 defendant decided to develop her

land both for purposes of preventing further excessive erosion and to permit her land to be irrigated. A portion of the canyon fingers located upon defendant's land that had been created by excessive erosion were filled and two retaining pits constructed to collect and hold irrigation water and runoff water. The excess water escaped from the pits through an overflow pipe and into the canyons.

The evidence would establish that the defendant intended to cause all the water falling upon her land to be drained toward the north and east and into the retaining pits. This is substantiated by reason of the fact that during the course of the construction and leveling on defendant's land, the culvert located in the northwest portion of her land was blocked so that water which normally would have flowed through the northwest culvert was now also diverted to the north and east and into the pits.

The first pit was built in the northeast corner of the northwest quarter of the section, or almost exactly in the northeast corner of the irrigated portion of the defendant's land. The second pit is located southeast of the first pit. The inlet tube of the first pit located on its west rim was approximately 10 feet higher in elevation than the outlet tube on its east rim.

Beginning in April of 1977 the plaintiffs found mud in their pasture. On two occasions in May of 1977 heavy rains caused the east wall of the defendant's first pit to collapse and permit water and silt to flow onto the lands of the plaintiffs. A third rain, later in May, resulted in further silt being washed upon plaintiffs' pastureland. Finally, on Memorial Day morning there was an additional hard 2-inch rain. Much of the water was forced over the plaintiffs' roadway through the fields on the plaintiffs' farm by the dam forming the west edge of the north pit on defendant's farm. This water coming across the road deposited silt across the end rows of the plain-

tiffs' fields and in the waterway west and north of the plaintiffs' house. The waterway was covered with silt in some areas and in others scouring had occurred.

On August 25, 1977, a rain of 1½ inches again caused a breach of the east wall of the defendant's pit which had since been repaired, and again brought silt into the pastureland of the plaintiffs.

The evidence does disclose that at the time of the commencement of the trial the defendant had relocated the retention pit that had failed and it had been redesigned and reconstructed, to the end that it serves its purpose and does collect and retain irrigation runoff water with the excess being spilled into the canyon.

Plaintiffs filed suit against the defendant alleging the various facts as disclosed herein and seeking injunctive relief against defendant from continuing to cause the waters to flow onto plaintiffs' land. Defendant filed an answer and cross-petition. By her answer defendant generally denied the allegations of plaintiffs' claim, and further alleged that the slope of the land was such that in its natural state surface and floodwaters were assembled in natural drains and flowed from the lands of defendant onto the lands of the plaintiffs. Defendant then alleged that the plaintiffs constructed a dam upon their property in the form of a private roadway, which roadway dam prevented the waters from traveling in their natural drainageway, thereby causing the damage to plaintiffs' property. Defendant therefore alleged that any damage which may have been occasioned was caused by the plaintiffs' own action in damming the natural flow of the water. By way of cross-petition, defendant sought to have the plaintiffs remove the roadway dam and permit the waters to flow uninterrupted in their natural drainways.

The evidence with regard to the roadway discloses that a road of some type existed in the location of

the questioned road since before 1941. It was a private roadway wholly located upon the plaintiffs' land. The evidence further disclosed that in approximately 1961, after completing the leveling of their farm, plaintiffs hired a construction company which elevated the road by approximately 18 inches. The evidence discloses that the reason for the increase in elevation was to bring the road up to the elevation of the fence row to the south which had built up through silt deposits and which caused snow to drift across the roadway.

After taking evidence from both parties and personally viewing the premises, the trial court concluded that judgment should be entered for the plaintiffs and against the defendant, granting the requested injunction and awarding damages to the plaintiffs and against defendant. With regard to the amount of damages, the trial court specifically found that plaintiffs were entitled to damages in the amount of $164.85 for one-half the cost of cleaning the waterway, $37.50 for one-half the cost of reseeding the waterway, $121.50 for one-half of three-fourths of cleaning the reuse pit on plaintiffs' land, and owned by plaintiffs, and $880 for damage to a pond located upon plaintiffs' land. The trial court further found that as to the pasture, evidence of specific money damages had not been shown sufficiently to entitle the plaintiffs to recover.

The defendant assigns several specific errors. For our purposes, however, the questions can be simplified as follows: (1) Is there a natural drainageway on plaintiffs' property into which water from defendant's land should flow, and (2) did the trial court err in awarding damages to the plaintiffs and against the defendant? We turn then to the first question, whether there is evidence of a natural drainageway across plaintiffs' land in which waters from defendant's land should flow.

Much argument is made by defendant as to whether

this is collected water or diffused surface water and whether this court should now reconsider its stand as taken in the case of Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195. As we see the facts, however, none of that is necessary in order to properly dispose of the instant case.

Whether the waters, before they get to the defendant's pits, are diffused surface waters or waters in a natural drainageway is of no moment in this case. Whatever they may be initially, by the time they arrive in the defendant's pits they have been collected and gathered. Furthermore, the evidence in this case, including the aerial photos, clearly and unequivocally establishes the fact that there is not now, nor has there apparently ever been in the reasonable past, any natural drainageway flowing from the location of the defendant's reuse pits across the common boundary of the lands in question and onto and over plaintiffs' property. Nor is there any evidence of a drainageway leading from defendant's land into plaintiffs' land at any place where defendant's land abuts plaintiffs' roadway. There being no natural drainageways into which this water would be wont to flow, the rules in connection therewith are clear and unequivocal. In the case of Linch v. Nichelson, 178 Neb. 682, 134 N. W. 2d 793, we said, "It is the law of this state that waters resulting from rainfall and melting snow are diffused waters which an owner may control on his own land. He may collect them, change their course, or pond them upon his land, or cast them into a natural drain without liability. He may not, however, collect such waters and divert them onto the lands of another except in depressions, draws, swales, or other drainageways through which such waters were wont to flow in a state of nature. Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195." As we have already indicated, the evidence conclusively establishes that there are no depressions, draws, swales, or other drainageways through

which such waters would be wont to flow in a state of nature from the location of the defendant's pits onto and across the plaintiffs' land.

This being the case, the defendant in this matter did not have the right to collect the waters and cause them to be thrown upon plaintiffs' land. As we said in Linch v. Nichelson, *supra*, "It is fundamental that an owner may not by ditch, dam, or terrace divert surface waters in such a manner as to cast them in volume upon the adjoining lands of another to his damage." The defendant in this case could not lawfully collect these waters and cast them upon the plaintiffs' lands. Likewise, because the waters cast upon the plaintiffs' land would not otherwise be inclined to flow in natural drainageways, running across the common boundary and over plaintiffs' land, the plaintiffs could take any reasonable action to resist the waters, including the construction of the roadway dam. See, Jorgenson v. Stephens, 143 Neb. 528, 10 N. W. 2d 337; Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732. The trial court was therefore totally correct in enjoining the defendant from continuing to cause the waters otherwise collected to flow upon the plaintiffs' property.

Where the evidence establishes that the injury will be either continuous or repetitive, the granting of an injunction is an appropriate remedy. See, Lackaff v. Bogue, 158 Neb. 174, 62 N. W. 2d 889; Linch v. Nichelson, *supra*; Nichol v. Yocum, *supra*.

We turn next then to the matter of the damages. Defendant argues that the evidence is speculative and that therefore the trial court erred in awarding damages. We are not unmindful that this being an equity action it is considered by us de novo. Nevertheless, in a trial de novo this court, in reaching its own findings, will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. The Wickes Corporation v.

Frye, 202 Neb. 23, 273 N. W. 2d 663. We likewise must keep in mind that the trial court personally inspected the premises. We have said that it is the duty of this court on review of the findings made by a trial court when it has made an inspection of the premises and has given consideration to the competent and relevant facts revealed thereby to give weight thereto. Webb v. Lambley, 181 Neb. 385, 148 N. W. 2d 835; Onstott v. Olsen, 180 Neb. 393, 142 N. W. 2d 919.

The record in this case clearly establishes that the successive collapsing of the walls of defendant's pit resulted in silt being carried into and upon plaintiffs' land, thereby causing damage. Plaintiffs produced a witness who testified as to his opinion concerning the cost of repairing the damage caused by the water flowing across plaintiffs' land. Defendant argues that because a certain amount of silting would have occurred even in the absence of defendant's acts, all damages are speculative. While it may be true that some silting would have occurred over a period of time, it is likewise clear that the defendant's acts caused immediate and increased damage to plaintiffs' land. Where it has been proven that damage has resulted and the only uncertainty is the exact amount, it is sufficient if there is evidence from which the amount of the damages can be ascertained with reasonable certainty. Omaha Paper Stock Co. v. California Union Ins. Co., 200 Neb. 31, 262 N. W. 2d 175; Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900. In all cases, the law requires not mathematical certainty but merely the best evidence obtainable under the conditions existing and some reliance must be placed upon the integrity and good faith of witnesses and the discretion of the jury. See Jensen v. Palatine Ins. Co., 81 Neb. 523, 116 N. W. 286. This being an equity case, the trial court in the first instance and this court on appeal serves as the trier of fact.

Our examination of the record leads us to the conclusion that the trial court did not err in its awarding of damages. The amount of damages was reasonably within the possible ranges which could be found based upon the evidence before the court.

Therefore, the judgment of the trial court is in all respects affirmed.

AFFIRMED.

BOSLAUGH and CLINTON, JJ., concur in result.