LARRY CREASON, APPELLEE, v. GARY MYERS, APPELLANT.

350 N.W.2d 526

Filed June 8, 1984. No. 83-039.

Gwyer Grimminger and Lynn B. Lamberty of Grimminger, Milner and Lamberty, for appellant.

Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Larry Creason's amended petition against Gary Myers contained two causes of action—the first for alienation of affections and the second for criminal conversation. Myers demurred, claiming the amended petition did not state facts sufficient to constitute a cause of action. After the district court overruled Myers' demurrer, there was a trial in which the jury returned a verdict in favor of Creason for alienation of affections and a verdict in favor of Myers regarding criminal conversation. We affirm.

Myers' only assignment of error concerns his overruled demurrer. Myers contends that alienation of affections and criminal conversation as causes of action should be judicially abolished and recovery denied for such causes of action.

The jury's verdict in this case absolved Myers from liability for criminal conversation. "The right of review is restricted to persons or parties aggrieved by the decision below." 4 C.J.S. *Appeal & Error* § 183 at 554 (1957). In overruling Myers' demurrer regarding criminal conversation, the trial court's error, if any, was rendered harmless by the verdict favorable to Myers on the cause of action for criminal conversation. See, *Walser v. Missouri Pac. R. Co.*, 6 S.W.2d 632 (Mo. App. 1928); *Dennis v. Smith*, 186 Kan. 539, 352 P.2d 405 (1960); cf. *Prell v. Murphy*, 178 Neb. 278, 133 N.W.2d 5 (1965) (overruling a defendant's motion for directed verdict cannot be claimed as error on appeal when there is a defendant's verdict). The rationale for the rule,

namely, a defendant's verdict cures error, if any, in a court's failure to dismiss a pleaded action vulnerable to a demurrer, is the fact that the jury has produced what was sought by the defendant's pleading (no recovery by the plaintiff), and, therefore, the defendant has sustained no prejudice as a result of the court's ruling on the demurrer.

Because the district court's ruling on Myers' demurrer concerning criminal conversation has not resulted in harm, the absence of prejudice or harm to Myers prevents reversal of any ruling on the demurrer. Consequently, we do not decide any question about the existence of criminal conversation as a cause of action in Nebraska. See, however, *Kremer v. Black*, 201 Neb. 467, 268 N.W.2d 582 (1978).

Before we address the remaining question, whether alienation of affections should be retained as a cause of action in Nebraska, a review of the nature of marriage under Nebraska law and the elements of alienation of affection is helpful.

Marriage results in a status. *University of Michigan v. McGuckin*, 64 Neb. 300, 89 N.W. 778 (1902); *Willits v. Willits*, 76 Neb. 228, 107 N.W. 379 (1906); *Collins v. Hoag & Rollins*, 122 Neb. 805, 241 N.W. 766 (1932). Status means a legal relationship. See, *Sun Oil Company v. Guidry*, 99 So. 2d 424 (La. App. 1957); *Calhoun v. Bryant et al.*, 28 S.D. 266, 133 N.W. 266 (1911).

Alienation of affections consists of a third person's wrongful conduct intruding upon or interfering with the marital relationship between husband and wife and causing a loss of consortium. See, *Baltzly v. Gruenig*, 127 Neb. 520, 256 N.W. 4 (1934); *Sonneman v. Atkinson*, 121 Neb. 752, 238 N.W. 532 (1931); *Larsen v. Larsen*, 115 Neb. 601, 213 N.W. 971 (1927); *Hansen v. Strohschein*, 178 Neb. 367, 133 N.W.2d 598 (1965); *Hodgkinson v. Hodgkinson*, 43 Neb. 269, 61 N.W. 577 (1895).

"Consortium" means comfort, society, love, and

protection. See, *Sowle v. Sowle*, 115 Neb. 795, 215 N.W. 122 (1927); *Larsen v. Larsen, supra.*

The cause of action for alienation of affections is available to either spouse—wife (*Hodgkinson v. Hodgkinson, supra*) or husband (*Sonneman v. Atkinson, supra*). Alienation of affections does not necessarily involve an amorous intruder. See *Lane v. Spence*, 70 Neb. 204, 97 N.W. 299 (1903) (husband's suit against his father-in-law for alienation of the affections of the plaintiff's wife); *Hodgkinson v. Hodgkinson, supra* (wife's suit against her husband's parents, who induced plaintiff's husband to abandon the plaintiff).

Myers urges us to abolish the common-law right to recover for alienation of affections, and directs our attention to states in which such recovery has been barred. Although legislatures in some states have abolished the right to recover for alienation of affections, we find that only two courts have nullified alienation of affections as a cause of action. See, *Wyman v. Wallace*, 94 Wash. 2d 99, 615 P.2d 452 (1980); *Fundermann v. Mickelson*, 304 N.W.2d 790 (Iowa 1981). We also note that the Supreme Court of South Dakota in August 1981 preserved the common-law right to sue for alienation of affections. See *Hunt v. Hunt*, 309 N.W.2d 818 (S.D. 1981). Such rather sparse judicial activity affecting the status of alienation of affections as a cause of action cannot be characterized as the advent of an abolitionary avalanche burying alienation of affections. Although an appreciable number of legislatures have abolished the right to recover for alienation of affections, we nevertheless realize that alienation of affections, as a court-originated cause of action, must be evaluated by this court rather than deferred for legislative action. Cf. *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968) (court abolition of immunity for governmental subdivisions and local public bodies regarding tort liability for ownership, use, and operation of motor vehicles).

Suggested abolition of alienation of affections, as expressed by the court in *Wyman v. Wallace, supra,* is based on the following: (1) The underlying assumption of preserving marital harmony is erroneous; (2) Abuse of litigation to recover damages; (3) Difficult standards for assessing damages; and (4) A successful plaintiff's apparent "forced sale" of a spouse's affections.

Denouncing preservation of marital harmony as a reason to retain the action for alienation of affections is based on a somewhat cynical argument, that is, there could be no alienation if the spouses had mutual affection in an otherwise shaky marriage. This argument falls under the weight of its own self-contradiction, namely, acknowledgment that a marital relationship does indeed exist but in a condition less than optimal. Because there is an existing relationship, such relationship deserves protection under our system of law lest we find ourselves acknowledging a right—the relationship—and injury to that right without affording a remedy. See *Heck v. Schupp,* 394 Ill. 296, 68 N.E.2d 464 (1946). Prudence dictates that marital stability bear upon damages and not bar recovery. A marriage teetering on the brink of domestic disaster should nevertheless be spared a shove over the precipice.

A feared abuse of litigation involving alienation of affections is dispelled by examination of our adversarial process. "First, the very purpose of courts is to separate the just from the unjust causes; secondly, if the courts are to be closed against actions for . . . alienation of affections on the ground that some suits may be brought in bad faith, the same reason would close the door against litigants in all kinds of suits, for in every kind of litigation some suits are brought in bad faith; the very purpose of courts is to defeat unjust prosecutions and to secure the rights of parties in just prosecutions . . . ." *Wilder v. Reno,* 43 F. Supp. 727, 729 (M.D. Pa. 1942). The foregoing statement from *Wilder* applies not

only to an action for alienation of affections but equally as well to other types of actions too numerous to mention. Excluding the present case, we note that there have been reported in this court 30 cases involving alienation of affections. That relatively small number of cases rebuts any assertion that alienation of affections is a frequently abused cause of action. Accordingly, we are confident that our adversarial process, comprised of juries, judges, and counsel, will provide adequate safeguards for the rights of litigants involved in a suit for alienation of affections, and we will continue to depend on that adversarial process to ferret out the nonmeritorious or unjust claim.

A jury's difficulty in assessing damages is no justification for abolishing the cause of action for alienation of affections. In *Selders v. Armentrout*, 190 Neb. 275, 207 N.W.2d 686 (1973), this court recognized that damages for the death of a minor child should be extended to include the loss of the society, comfort, and companionship of the child, and we entrusted juries with the responsibility of ascertaining such damages. There has been no hue and cry that juries have run amuck in awarding damages in cases involving a minor child's death. It would be infinite irony that we recognize damages for the death of a child who is a part of a home but deny damages for the death of the marriage of spouses who have made the home. Where the legal right to damages exists, computation of damages with mathematical certainty is not required. See, *Delp v. Laier*, 205 Neb. 417, 288 N.W.2d 265 (1980); *Robert E. McKee General Con., Inc. v. Insurance Co.*, 269 F.2d 195 (10th Cir. 1959). The size of an award for alienation of affections has been an issue in eight cases reported in this court, and in three of those eight cases we have said the award was excessive. Those figures need no further comment. It is the height of hypocrisy that a wrongdoer complain about inaccuracies or uncertainty in a jury system. One

whose actions hurt another is in an extremely poor position to demand precision in measuring damages, and will have to bear whatever risk of uncertainty exists in our system of settling differences. See, *Story Parchment Co. v. Paterson Co.*, 282 U.S. 555, 51 S. Ct. 248, 75 L. Ed. 544 (1931); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 66 S. Ct. 574, 90 L. Ed. 652 (1946); *Independence Tube Corp. v. Copperweld Corp.*, 691 F.2d 310 (7th Cir. 1982); *Cook Associates, Inc. v. Warnick*, 664 P.2d 1161 (Utah 1983). Although critics may assail a jury as a weakness of our system, perhaps that alleged weakness is the very strength of our adversarial process. Today's sophisticated juries, under proper instruction, are eminently qualified with a wealth of experience to determine appropriate damages in a case of alienation of affections.

Those who characterize recovery in an action for alienation of affections as a "forced sale of the spouse's affections" can do so only by reverting to an archaic view that marriage results in a property right in a spouse rather than a personal relationship with a human being. Whatever may have been the musty origin of the cause of action for alienation of affections, today's special and substantial relationship through marriage demands a remedy for an injury to that relationship.

It is manifest and undeniable that the people of Nebraska still hold the marital relationship in high regard. Such public esteem is demonstrated in Rule 505 of the Nebraska Evidence Rules, Neb. Rev. Stat. § 27-505 (Reissue 1979), where the marital relationship affects the availability of evidence when one spouse is called to testify against the other. The Nebraska Evidence Rules have been in effect as a part of Nebraska statutes since 1975. By 1984 Neb. Laws, L.B. 696, enacted by the Eighty-eighth Legislature, Second Session, and approved by the Governor on February 24, 1984, Rule 505(3)(b) of the Nebraska Evidence Rules provides that interspousal privilege

may not be claimed "[i]n any case brought by either husband or wife against a third person relating to their marriage relationship or the interruption of or interference with such relationship." This statutory provision permits only one conclusion—the people of Nebraska still recognize the relationship of husband and wife as something of value to be protected by and in the courts.

As Wilde observed, a cynic is one "who knows the price of everything, and the value of nothing." We believe the marital relationship has value as a special and substantial right recognized as a part of the public policy of Nebraska to be protected in the courts of this state. We hold that a cause of action for alienation of affections still exists in Nebraska.

The judgment of the district court in all respects is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority's opinion in this case. I believe that if, indeed, a cause of action for alienation of affections ever had its place in the judicial process, that time has now long since passed and the cause of action should be eliminated. My basis for reaching this conclusion is, to a large extent, based upon the very same arguments made by the majority for permitting its continued existence. The majority suggests that "[i]t is manifest and undeniable that the people of Nebraska still hold the marital relationship in high regard." While some of the people of Nebraska may still hold marriage in high regard, for a large number their behavior decries such statements. In 1982, for example, there were 14,081 marriages entered into in the State of Nebraska. During that same period of time, there were 6,508 dissolutions of marriage granted by our courts. To therefore suggest that the cause of action for alienation of affections should exist solely on the basis of the sanctity of marriage is to simply disregard reality. It is a nice thought, but

simply not very realistic in light of the facts. While I completely agree with the majority as to how the public should view marriage, and I would support any program intended to ensure the continuation of marriage, I simply must recognize the facts as they exist.

The problems which a cause of action for alienation of affections can create in a society in which many outside influences affect the way we live are numerous. The majority has properly noted that a cause of action for alienation of affections does not necessarily involve an amorous intruder. See, *Lane v. Spence*, 70 Neb. 204, 97 N.W. 299 (1903); *Hodgkinson v. Hodgkinson*, 43 Neb. 269, 61 N.W. 577 (1895). One could easily envision a situation in which an employer may be sued for alienation of affections because one of the spouses believes that the other one has left the marriage to seek a career at the inducement of the employer. With nearly half of all marriages ending in divorce, the potential for alleged causes of action for alienation of affections is, in my mind, unlimited and has no relation to the realities of life. People are motivated today to leave marriages for reasons of their own and not because of some inducement by another. The independence of spouses today perhaps plays the greatest role in loss of affection and the destruction of a marriage. To encourage independence and freedom among the sexes and then to permit one of the spouses to sue because of the spouse's inability to hold the marriage together seems to me to be totally inconsistent.

Nor am I unmindful of the fact, noted by the majority, that in most jurisdictions where the cause of action has been abolished, it has been done so by the legislature. However, where, as here, the cause of action is one created by the court, it is one which should be abolished by the court, in the same fashion as we abolished interspousal immunity. See *Imig v. March*, 203 Neb. 537, 279 N.W.2d 382 (1979). As ob-

served by the Iowa court in *Fundermann v. Mickelson*, 304 N.W.2d 790, 794 (Iowa 1981),

> In the last analysis we think the action should be abolished because spousal love is not property which is subject to theft. We do not abolish the action because defendants in such suits, need or deserve our protection. We certainly do not do so because of any changing views on promiscuous sexual conduct. It is merely and simply because the plaintiffs in such suits do not deserve to recover for the loss of or injury to "property" which they do not, and cannot, own.

I believe that the cause of action should be abolished, and the sooner the better.